Motions for Rehearing Overruled; Majority and
Dissenting Opinions of November 20, 2003, Withdrawn; Affirmed in Part and
Reversed and Remanded in Part and Majority and Dissenting Opinions on Rehearing
filed February 26, 2004. 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NOS. 14-02-00193-CR

           14-02-00194-CR

           14-02-00195-CR

____________

 

ROBERT PHILLIPS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause Nos. 881,466;
881,467; 881,468 

 



 

M A J O R I T Y   O P I N I O N   O N  
R E H E A R I N G

We withdraw our opinion issued November
20, 2003, and substitute the following opinion on motion for rehearing.








A jury found appellant guilty of three
counts of sexual assault of a child, and sentenced appellant to ten years= confinement in
the Texas Department of Criminal Justice, Institutional Division and a
$5,001.00 fine for each count.  In nine
issues on appeal, appellant complains that the trial court erred (1) by
refusing to grant a mistrial even though a witness had mentioned an extraneous
offense, (2) by not requiring the State to elect a specific transaction, (3) by
refusing to grant a mistrial on the basis of improper jury argument, and (4) by
refusing to grant a mistrial because the State improperly commented on
appellant=s right to a jury trial.  We affirm in part and reverse in part.  For two of the indicted offenses, we reverse
because we conclude the trial court committed harmful error in not requiring
the State to elect which offenses it was relying on for conviction.  For the third indicted offense, we affirm
because the State presented specific testimony of only one occurrence; on this
count, the State was not required to elect.

FACTUAL AND PROCEDURAL BACKGROUND

Appellant initially hired the
fifteen-year-old complainant to teach him English and to help him with his
business.  While they were working
together, appellant sexually assaulted the complainant; this sexual activity
continually escalated for months.  On
March 10, 2000, appellant took the complainant to a hotel room where they
engaged in sexual activity.  The
complainant eventually told her mother of the activity, and her mother notified
the police.

The State charged appellant with three
counts of sexual assault of a child.  The
jury found appellant guilty of all three counts.  

DISCUSSION

Appellant raises nine issues on
appeal.  In his first issue, appellant
contends the trial court erred when it refused to grant his motion for a
mistrial based on a witness=s comment about an
extraneous offense.  Combined in the
second, third, and ninth issues, appellant argues the trial court failed to
compel the State to elect which transaction it would rely upon for conviction.  In the fourth, fifth, seventh, and eighth
issues, appellant complains that the trial court erred when it refused to grant
a mistrial because of the State=s improper jury
arguments.  Finally, in the sixth issue,
he asserts the trial court erred when it refused to grant a mistrial because
the State improperly commented on appellant=s right to a jury
trial.








I.        IMPROPER
COMMENT ON EXTRANEOUS OFFENSE

First, appellant argues the trial court
erred by not granting him a mistrial when the complainant mentioned an
extraneous offense.  At appellant=s request, the
trial court instructed the jury to disregard the statement.  Nonetheless, he claims a mistrial was
warranted.  We review a trial court=s denial of a
mistrial under an abuse of discretion standard. 
Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1070 (2000). 

An instruction by the trial court to
disregard improper testimony will usually cure error.  Campos v. State, 589 S.W.2d 424, 428
(Tex. Crim. App. 1979); Zataraus v. State, 666 S.W.2d 294, 296 (Tex.
App.CHouston [14th
Dist.] 1984, no pet.).  When the trial
court instructs a jury to disregard, we presume the jury follows the trial
court=s
instructions.  See Waldo v. State,
746 S.W.2d 750, 752B53 (Tex. Crim. App. 1988).  However, if the error is extremely
prejudicial and cannot be withdrawn from the juror=s minds, the trial
court should declare a mistrial.  See
Lusk v. State, 82 S.W.3d 57, 60 (Tex. App.CAmarillo 2002,
pet. ref=d).  Accordingly, a mistrial is only appropriate
when the event is Aso emotionally inflammatory that curative
instructions are not likely to prevent the jury from being unfairly prejudiced
against the defendant.@  Id. at 60; see also Shepherd v. State,
915 S.W.2d 177, 179B80 (Tex. App.CFort Worth 1996,
pet ref=d) (holding a
repeated comment on defendant=s failure to
testify warranted mistrial).  

Here, when the State questioned the
complainant about specific acts, she alluded to an extraneous offense by
appellant.  She stated, in part, the
following:

[The
State]:                      All right. At
some point 14 months later, 15 months later, 16 months later, around May of
2001, did you finally tell your mom?

[The
Complainant]:           I finally told my
mother after my sister confessed of something.

[Defense Attorney]:          I will ask that last statement be stricken and the jury be
instructed to disregard.  May we approach
the bench, Your Honor?








Outside the jury=s presence,
appellant=s counsel requested a mistrial.  The trial court denied the mistrial, but
instructed the jury to disregard the last question and the last answer.[1]

First, we do not find that the comment
obviously refers to an extraneous offense. 
But even if it did refer to an extraneous offense, the remark was
inadvertent and isolated.[2]  Moreover, the single reference to any
possible activity between appellant and the complainant=s sister was not Aso emotionally
inflammatory@[3] that the trial
court=s instruction to
disregard did not cure all error.  See
Lusk, 82 S.W.3d at 60.  Given the
vague nature of the comment, the trial court did not abuse its discretion in
denying appellant=s motion for a mistrial.  See Ladd, 3 S.W.3d at 567.  We overrule appellant=s first issue.

II.       FAILING
TO ELECT A TRANSACTION FOR EACH OFFENSE

In issues two, three and nine, appellant
complains that the trial court committed reversible error when it failed to
require the State to elect which transaction it would rely upon for each of the
three indicted offenses.  As to two of
the indicted offenses, we agree that the trial court erred by not requiring the
State to elect the transaction, and that the error was harmful.  As to the third indicted offenseCthe penetration of
the complainant=s mouth with a sexual organCwe find no harmful
error.

A.      Legal
Premises Underlying the Election Requirement. 








The general rule is Awhere one act of
intercourse is alleged in the indictment and more than one act of intercourse
is shown by the evidence in a sexual assault trial, the State must elect the
act upon which it would rely for conviction.@  O=Neal v. State, 746 S.W.2d 769,
771 (Tex. Crim. App. 1988).  Before the
State rests, the trial court has discretion in directing the State to make an
election.  See id.  AHowever, once the
State rests its case in chief, in the face of a timely request by the
defendant, the trial court must . . . order the State to make its
election.  Failure to do so constitutes
error.@  Id. at 772; see also Crosslin v.
State, 90 Tex. Crim. 467, 235 S.W. 905 (1921).

Case law has given four reasons for the
rule: 

$                  
to
protect the accused from the introduction of extraneous offenses, see Fisher
v. State, 33 Tex. 792, 794 (1870);

$                  
to
minimize the risk that the jury might choose to convict, not because one or
more crimes were proved beyond a reasonable doubt, but because all of them
together convinced the jury the defendant was guilty, see id. (AThe jury may have taken both
[offenses] into account, and have considered that one or the other was not
sufficiently made out to warrant a conviction, but that both together convinced
[it] of the guilt of the defendant. . . .@);

$                  
to
ensure unanimous verdicts, that is, all of the jurors agreeing that one
specific incident, which constituted the offense charged in the indictment,
occurred, see Francis v. State, 36 S.W.3d 121, 123B25 (Tex. Crim. App. 2000); and 

$                  
to give the defendant notice of the particular offense the
State intends to rely upon for prosecution and afford the defendant an
opportunity to defend, see O=Neal, 746 S.W.2d at
772B73. 

See also Dix and Dawson,
Texas Practice, Criminal Practice and Procedure, Election Among Transactions, AOffenses,@Acts, or Incidents, vol. 42, '' 30.52B30.60, pp. 664B687 (2d ed. 2001).

The State admits the trial court erred by
not requiring the State to elect an act and a date, and we find the trial court
did err by not instructing the State to elect a transaction.  See id.  Having found that the trial court erred, our
next task is to determine whether the error was harmful.  Two problems complicate that review, which we
will address in turn.

 








B.      Complaint
Not Waived by Giving a Bad Reason for Wanting an Election.

The first complicating fact is that on
appeal, appellant gives a different reason for wanting the election than he
gave the trial court.  At trial,
appellant advanced double jeopardy concerns as his reason for seeking an
election.[4]  But, on appeal, appellant contends that the
State=s failure to elect
precluded him from establishing an alibi defense.  In spite of this disparity between the
complaint at trial and the complaint on appeal, we hold that appellant did not
waive his complaint that the court should have required the State to elect a
transaction for the three offenses.[5]  

To preserve a complaint for appellate
review, a defendant must make a timely request, objection, or motion that
specifically states the grounds for the requested ruling.  Tex.
R. App. P. 33.1(a)(1).  AAn objection
stating one legal basis may not be used to support a different legal theory on
appeal.@  Jensen v. State, 66 S.W.3d 528, 536
(Tex. App.CHouston [14th Dist.] 2002, pet ref=d).  








Although appellant advances a different
reason for wanting an election on appeal than he advanced at trial, the legal
basis for his motion remained the same: he wanted the State to elect the
offenses it would rely on for conviction. 
The trial court was not denied an opportunity to rule on whether to require
the election.  The election was mandatory,
regardless of the stated reason.  See
O=Neal, 746 S.W.2d at
772 (A[O]nce the State
rests its case in chief, in the face of a timely request by the defendant, the
trial court must . . . order the State to make its election.@).  In fact, for the State to be required to
elect, the defendant only needs to ask for an election; he need not state why
he wants it.  See id.  The reason for wanting it does not
matter.  On this issue, the trial judge
should not have any question; when an election is requested in the right type
of case, an election is mandatory.  See
id. 

C.      The
Failure to Require An Election is Constitutional.

Having concluded that appellant can raise
a new reason on appeal for wanting an election, we turn to the next
complicating factor of our review, and that is, whether the error is
constitutional or non-constitutional.  We
find the case law from the Court of Criminal Appeals unclear on this issue, and
the intermediate appellate case law, although clear on what type of error it
is, is unconvincing and inadequate as to why the courts have held that the
error is non-constitutional or constitutional. 


Two Courts of Appeals have held that any
error in failing to require the State to elect is non-constitutional in
nature.  See Cates v. State, 72
S.W.3d 681, 696B97 (Tex. App.CTyler 2001, no
pet.); Wilson v. State, 3 S.W.3d 223, 226 (Tex. App.CWaco 1999, pet.
ref=d).  We respectfully disagree.

The analysis in Wilson was based on
a decision by the Court of Criminal Appeals in Garcia v. State regarding
the specificity of the date in an indictment. 
Wilson, 3 S.W.3d at 226. 
In Garcia, the Court of Criminal Appeals held that failing to
specify in an indictment the precise date on which the charged offense occurred
is not constitutional error.  Garcia
v. State, 981 S.W.2d 683, 686 (Tex. Crim. App. 1998).  Relying on this decision, the Wilson court
Aconclude[d] that a
failure to require an election by the State is not an error of constitutional
dimension.@  See
Wilson, 3 S.W.3d at 226.  Unlike the Wilson
court, we believe Garcia is irrelevant to the issue now before us. 

Three reasons were advanced in Garcia
as to why the failure to specify a precise date in the indictment was not
constitutional:








First, time is not
a material element of an offense (at least, not usually).  Second, the primary purpose of specifying a
date in the indictment is not to notify the accused of the date of the offense
but rather to show that the prosecution is not barred by the statute of
limitations.  Third, it may be impossible
for the State to know precisely, or even approximately, when the charged
offense occurred.

Garcia, 981 S.W.2d at 686 (internal citations
omitted).  

None of these reasons apply to the failure
to elect.  First, the identity of the
offense charged is clearly a material element of that offense.  Second, the purpose of election in a case
like this, in which multiple offenses may have occurred, is to notify the
defendant of the offense with which he is charged, to allow him to prepare a
defense, and to obtain a unanimous verdict on the offense chargedCnot to satisfy the
statute of limitations.  Third, by the
time the case goes to the jury and the State knows what evidence is before the
jury, the State is required to choose the offense for which it is asking the
jury to convict.  By this time, a
specific event is important.  By this
time, the State must identify with sufficient specificity the offense on which
it relies for conviction so that the jury will know with certainty which
offense the State is alleging the defendant committed.  Thus, we disagree that Garcia is
reason for holding that this error is non-constitutional.

Unlike the Cates and Wilson
Courts, the Austin Court of Appeals, in Gutierrez v. State, held that
the right to require the State to elect is constitutional in nature.  Gutierrez v. State, 8 S.W.3d 739, 747B48 (Tex. App.CAustin 1999, no
pet.).  Although the Gutierrez court
does not say the failure to elect is a constitutional error, the cases cited,
and its description of them, certainly indicate that the court believed the
error was constitutional in nature:  A[A] person cannot
incur the loss of liberty for an offense without notice and a meaningful
opportunity to defend,@ citing Jackson v. Virginia, 443
U.S. 307, 314 (1979); and ANo principle of
procedural due process is more clearly established than that notice of the
specific charge, and a chance to be heard in a trial of the issues raised by
that charge, if desired, are among the constitutional rights of every accused
in a criminal proceeding in all courts, state or federal,@ citing Cole v.
Arkansas, 333 U.S. 196, 201 (1948).  See
Gutierrez, 8 S.W.3d at 747B48.













We think the answer may depend on the
reason an election is required, which may vary from case to case.  Returning to the four reasons for requiring
election, we think it most likely that the Court of Criminal Appeals would say
that election is required (1) to ensure a unanimous verdict and (2) to give
notice of the particular offense charged, and, in some cases, as here, there
may be the additional reason that (3) the jury might tend to convict, not
because it found beyond a reasonable doubt that each of the offenses was
committed, but because it was convinced of guilt because of the number of
alleged incidents.  If the reason
underlying the requirement is unanimity, it appears that the error is
constitutional in nature.[6]  See Francis v. State, 36 S.W.3d 121,
123B25 (Tex. Crim.
App. 2000) (finding error because it was possible that six members of the jury
convicted appellant on one sexual offense and six convicted him of another
sexual offense).[7]  If the reason underlying election is notice,
as stated in O=Neal, we agree with the Gutierrez court
that federal case law seems to support a conclusion that adequate notice and a
meaningful opportunity to defend are constitutional in nature.[8]  See O=Neal, 746 S.W.2d at
772; Gutierrez, 8 S.W.3d at 748. 
If the reason is to avoid the danger that the jury convicted based on
the frequency of incidents rather than on evidence that convinced the jury
beyond a reasonable doubt that the defendant actually committed the offense,
that, too, would seem to be constitutional in nature.  As we discuss in more detail below, all three
reasons apply here.[9]  As a result, we conclude that appellant=s right to require
the State to elect was a right of constitutional proportions and we will apply
the error analysis used for constitutional error.  See Tex.
R. App. P. 44.2(a).

Using the constitutional error standard of
review, we must reverse unless we find beyond a reasonable doubt that the error
did not contribute to the conviction.  Id.  If the State fails to elect, but the evidence
presented clearly indicates which specific incident the State is relying on,
the error is not harmful.  Compare O=Neal, 746 S.W.2d at
772B73 (finding error
was harmless because A[b]y the close of the State=s case, it was
clear that the act upon which the State would rely for conviction occurred on
April 24, 1984@), with Wilson, 3 S.W.3d at 227
(finding error was harmful because Athe State=s evidence . . .
points to two particular incidents for which the jury could have found [the
defendant] guilty and innumerable other instances which [the complainant]
generally described for which the jury could have found [the defendant] guilty@).[10]  

 

 








D.      On
Two of the Indicted Offenses, Error was Harmful.

For two of the offensesCdigital and oral
penetration of the female sexual organCwe clearly do not
know the occurrence the jury relied on to convict.  Details of more than a few offenses were
presented.[11]  The testimony was relatively clear about the
first time each type occurred, and that these occurred at appellant=s apartment.  But, after these first instances, both
occurred numerous times, always at appellant=s apartment.  Generally, no specific dates were given, and
sometimes the occurrences were not even identified by month; it does, however,
appear that they may have occurred weekly, although the record is slightly unclear
even on this point.[12]  A second date also stands out because the
minor complainant testified that these two offenses occurred at a motel; a
receipt was introduced into evidence to prove that appellant and the
complainant went to the motel.  Clear
testimony was presented that both types of penetration occurred at the
motel.  Thus, clear testimony exists for
two specific occurrences of both digital and oral penetration, along with
further testimonyCoften vague on the date, much less vague
on describing the actsCthat they often occurred.








When closing arguments were made, the
State did not refer to any specific incidents or offenses.  Not once did it point to a date or time or
place where even one offense occurred. 
Instead, the State spent its time pointing out that appellant=s defense was
unbelievable and that the defense strategy was to vilify the complainant.  

Thus, both offenses were described in
detail more than once; yet, it was completely unclear to the jury which act the
State would rely upon for conviction.  Cf.
O=Neal, 746 S.W.2d at
772B73 (finding error
harmless because the evidence clearly indicated which act the State would rely
upon).  This would have allowed the jury
to convict because some of the jurors relied on one offense and others relied on
another.  Under this scenario, we cannot
say beyond a reasonable doubt that the error did not contribute to the
conviction.[13]  See Tex.
R. App. P. 44.2(a).

E.      On
One Indicted Offense, Error was Harmless.

The third offenseCpenetration of the
minor=s mouth by
defendant=s sexual organCpresents a more
difficult question.  On this offense, the
complainant testified in detail about only occurrence, but also testified
generally that the activity continued at least intermittently from the summer
of 2000 until the spring of 2001.  The
question is whether some members of the jury could have convicted based on the
general testimony.








The Court of Criminal Appeals has
acknowledged that general statements of repeat occurrences may support a
conviction.  See Rodriguez v. State,
104 S.W.3d 87, 91 (Tex. Crim. App. 2003). 
The Court held  A[t]estimony that a
defendant delivered cocaine >maybe 20 or 30
times= is sufficient to
support a conviction for a delivery offense.@  Id. 
That testimony Awas not evidence of extraneous offenses
and . . . appellant=s remedy was to require the State to elect
the occurrence on which it sought to rely for conviction.@  Id. 
In light of Rodriguez alone, it is plausible that because the
State did not elect, some members of the jury could have convicted based on the
detailed testimony, while other members of the jury could have convicted based
on the general testimony.

However, in the case most similar to this
one, the Court of Criminal Appeals held that the failure to elect was
harmless.  See O=Neal, 746 S.W.2d at
772B73.  In O=Neal, the complainant
gave Aa detailed account
of an act of intercourse@ as well as testifying that intercourse
occurred Aon a regular basis.@  Id. at 770.  The Court held that because it was clear
which act the State would rely upon for conviction, A[t]he defendant
was on notice of the specific transaction to be relied upon by the State.@  Id. at 772.  Although O=Neal did not address
jury unanimity, based on O=Neal, we hold that the
jury would have known the specific act on which the State relied.  On this particular act of sexual assault, the
testimony revealed the details of the sexual act performed at a hotel.  As to other occurrences, the testimony was
only that the behavior was repeated, without any detail as to how, exactly
when, or where.  This is quite different
from the other two acts for which the complainant gave more than one detailed
account.[14]








Thus, we follow the reasoning in O=Neal and hold that
error in failing to require the State to elect is harmless when there is
detailed testimony as to one occurrence and general, very vague and unspecific
testimony as to other occurrences. 
Because the State focused its attention on one particular occurrence, it
would have been clear to both appellant and the jury that the State was relying
on that occurrence to convict.  Error as
to the third offense was therefore harmless.

III.      IMPROPER
JURY ARGUMENTS

Next, appellant complains that the trial court
erred in not granting a mistrial based on arguments the prosecutor made in his
closing.  The trial court cured any error
as to two of the improper arguments by instructing the jury to disregard them.  The last two arguments were improper, and
before the jury without any instruction, but we find the error harmless.

Proper jury argument must fall within one
of four areas: (1) summation of the evidence; (2) reasonable deduction from the
evidence; (3) answer to opposing counsel=s arguments; or
(4) a plea for law enforcement.  Brandley
v. State, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985).  Improper closing arguments include references
to facts not in evidence or incorrect statements of law.  Parks v. State, 843 S.W.2d 693, 695 (Tex.
App.CCorpus Christi
1992, pet. ref=d). 
For an improper jury argument to mandate reversal, it must be extreme,
violate a mandatory statute, or inject new facts into the record.  Brandley, 691 S.W.2d at 712B13.








When a prosecutor makes uninvited and
unsubstantiated accusations of improper conduct directed toward a defendant=s attorney, in an
attempt to prejudice the jury against the defendant, courts refer to this as
striking a defendant over the shoulders of his counsel.  See Gomez v. State, 704 S.W.2d 770,
771B72 (Tex. Crim.
App. 1985).  This can be seen, for
example, when the prosecutor argues that defense counsel has manufactured
evidence, suborned perjury, accepted stolen money, or represented
criminals.  See Washington v. State,
822 S.W.2d 110, 119 (Tex. App.CWaco 1991), rev=d on other grounds, 856 S.W.2d 184
(Tex. Crim. App. 1993); see also Wilson v. State, 938 S.W.2d 57, 58
(Tex. Crim. App. 1996) (finding the statement A[defense counsel]
wishes . . . that you turn a guilty man free . . . because he doesn=t have the
obligation to see that justice is done@ was improper); Anderson
v. State, 525 S.W.2d 20, 21B22 (Tex. Crim.
App. 1975) (finding the State struck over the shoulders of the defense when the
State accused the defense attorneys of lying). 
Generally, a trial court cures any error from an improper jury argument
when it instructs the jury to disregard the comment.  See Wilkerson v. State, 881 S.W.2d
321, 327 (Tex. Crim. App. 1994). 

Appellant contends the following comments
by the State struck at him over the shoulders of his counsel: 

1.       AI am not going to talk very long, and I=ll basically leave you with a
couple things I would ask you to think about in good heartCgood heartedly while they get up
and talk to you for about 30 minutes, and that is this.  First, there are hours and hours of needless,
miserable, hopeless and pathetic pecking at the State=s case.@

2.       AWhere do I start? 
You know, if a man is caught in a trap he steps in it, didn=t see it coming. . . . He may bark
and cry, chew on the tree, chew his own paw off, chew through the chain, whatever.  He will do anything.  And it may be a crude comparison but if you
think hard about it, good and hard about it, it=s not unlike this case that you
have here.  Because when you=re caught you do everything in your
power to get out.  You have your lawyers
make personal attacks on me, you get up and make ten-minute speaking
objections, youC@

3.       ACshe=s got to get it again when she came
in here.  They nailed her up on a cross,
they called her whore, they called her a dream girl, they called her a liar.@

4.       AArmed with that
awesome ability to do right what are you going to do?  Are you going to validate the most lame,
ridiculous, self-serving, pathetic story from him, the guy who while he
testified did not have the guts to look you in the eye?  Are you going to believe a 15, 16 year old
girl, she=s 17 now, who has the courage to come in
here and get nail[ed] to a cross and gutted for no reason.@

Appellant=s attorney
properly objected to all four statements. 
The trial court sustained appellant=s objection to the
first two statements, instructed the jury to disregard, and denied the motions
for mistrial.  The trial court overruled
appellant=s objections to the last two
statements.  We will discuss separately
the first two statements for which the jury received an instruction to
disregard, from the last two statements for which the jury did not.

 








A.      Arguments
with an Instruction to Disregard.

In most instances, an instruction to
disregard an improper jury argument will cure any error.  Wesbrook v. State, 29 S.W.3d 103, 115
(Tex. Crim. App. 2000).  Only offensive
or flagrant error will mandate reversal after a trial court=s instruction to
disregard.  Id. at 116.  Here, the trial court quickly sustained
appellant=s two objections and instructed the jury
to disregard the State=s comments.  Although error, the comments were not so
highly inflammatory that a jury could not ignore them.  Garcia v. State, 943 S.W.2d 215, 217
(Tex. App.CFort Worth 1997, no pet.) (holding that
when assessing the curative effect of a statement, the correct inquiry is
whether or not the statement was so inflammatory than an instruction to
disregard could not cure its prejudicial effect).  Since the record shows no evidence to the
contrary, we assume the jury followed the trial court=s instruction to
disregard.  See Gardner v. State,
730 S.W.2d 675, 696 (Tex. Crim. App. 1987), cert. denied, 484 U.S. 905
(1987).  Therefore, the trial court cured
any error, and we overrule these two issues by appellant.

B.      Arguments
without an Instruction to Disregard.

We now address the State=s last two
comments that did not receive an instruction to disregard.  Practically speaking, it is impossible to
articulate a precise rule to determine when a prosecutor is striking over the
defense counsel=s shoulders and when he is making a proper
jury argument.  However, we find that
parts of the State=s argumentsCAnailed her up on a
cross,@ Anail[ed] to a
cross,@ and Acalled her whore@Cwere improper and
probably did strike at appellant over his counsel=s shoulders.  That is, the comments were targeted at
defense counsel=s handling of the case, and were made
toward defense counsel personally.  See
Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).  The trial court erred by overruling the
appellant=s objections to these two arguments.  








That means we must determine whether the
trial court=s error warrants reversal.  See Tex.
R. App. P. 44.2.  The Texas Court
of Criminal Appeals characterized erroneous rulings regarding improper jury
argument as non-constitutional or Aother error@ within Rule
44.2(b).[15]  Mosley, 983 S.W.2d at 259; Ortiz v.
State, 999 S.W.2d 600, 605B06 (Tex. App.CHouston [14th
Dist.] 1999, no pet.).  Rule 44.2(b)
requires us to examine the error in relation to the entire proceeding to
determine whether it had a Asubstantial and
injurious effect or influence in determining the jury=s verdict.@  See King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997); Ortiz, 999 S.W.2d at 606.  In other words, if we are assured the error
did not influence the jury, or only had a slight effect, we must affirm the
trial court.  See Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In Mosley, the court relied on the
following three factors to analyze the harm associated with improper jury
argument and to determine whether reversal was required:  (1) the severity of the misconduct (the
magnitude of the prejudicial effect of the prosecutor=s remarks); (2)
the measures adopted to cure the misconduct (the efficacy of any cautionary
instruction by the judge); and (3) the certainty of conviction absent the
misconduct (the strength of the evidence supporting the conviction).  Mosley, 983 S.W.2d at 259.

Thus, we look first at the severity of the
comments.  See id. at 259.  As we stated earlier, calling the complainant
a Awhore@ and stating that
the defendant was Anailing her to a cross@ are improper
statements.  AWhore@ we find somewhat
inflammatory; and Anailing her to a cross@ is rather
inflammatory and the most capable of inciting emotion.  We find them moderately extreme. 

Second, the trial court overruled
appellant=s objections, so it did not cure the State=s misconduct.  See id.  But it did minimize their impact somewhat by
instructing the jurors at the time of the objection to decide the case on the
evidence they heard from the witness stand.








Finally, we must look at the certainty of
appellant=s conviction absent the misconduct.  See id.  A good deal of evidence showed that appellant
did in fact sexually assault the complainant. 
A motel receipt confirmed appellant spent a day with the complainant
where he sexually assaulted her.  A
telephone conversation between appellant and the complainant was recorded by
police, in which appellant admitted teaching the complainant about sex and, in
which, in response to her query about when they would have another threesome,
appellant said they would talk about AThe Three
Musketeers@ later. 
Doctors testified about the physical evidence linking the assault to
appellant.  

Thus, we find the comments to be
error.  But, even though improper, even
though poor advocacy, they are not so inflammatory as to require reversal.  And even though the trial judge did not
sustain the objectionCwhich he should haveCwhen the
prosecutor said the inappropriate comment, the trial judge did at least
instruct the jurors that they would decide the case on the evidence they heard
from the witness stand.  It was not as
good as instructing them to disregard. 
It was not as good as reminding them that this was merely argument from
lawyers and not evidence.  But, it was
enough to minimize some of the impact. 
And when we consider the evidence in support of conviction, along with
these other considerations, we cannot conclude that the State=s improper
arguments influenced the jury to find appellant guilty.  The jury found appellant guilty because of
the evidence that came from the witness stand.

Accordingly, we find the error harmless,
and we overrule these two issues.

IV.      ALLEGED
IMPROPER COMMENT ON RIGHT TO JURY TRIAL

Finally, appellant also complains the
State improperly commented on his right to a jury trial.  The State argued, in part, the following:

[State]:         Now,
let=s go back to
it.  It=s like they nailed
her up to a cross and put a crown of thorns on her head and let the birds peck
at her.  And it=s no wonder that
these cases don=t get reported.  It=s not only that
she had to get victimized over and over and over by himC

Despite appellant=s timely
objection, the trial court allowed the statement.








As evidenced in our earlier discussion,
part of this comment probably was improper, but it was not a comment on
appellant=s right to a jury trial.  See Taylor v. State, 987 S.W.2d 597,
599 (Tex. App.CTexarkana 1999, pet. ref=d).  That is the only objection appellant made to
the comment.  We overrule appellant=s final issue.

                                                   CONCLUSION

In conclusion, all issues other than the
election issues are overruled.  As to
election, we overrule appellant=s issues regarding
appellant=s penetration of the complainant=s mouth.  We sustain appellant=s issues as to the
digital and oral penetration of the complainant=s sexual organ,
and reverse those two convictions and remand the cases to the trial court.

 

 

 

/s/      Wanda
McKee Fowler

Justice

 

 

Motions for Rehearing Overruled; Majority and
Dissenting Opinions of November 20, 2003, Withdrawn; Judgment rendered and
Majority and Dissenting Opinions on Rehearing filed February 26, 2004.

Panel consists of Chief Justice Hedges, Justices
Fowler and Edelman (Edelman, J. dissenting).

Publish C Tex. R. App. P. 47.2(b).











[1]  The trial
court also instructed the State to again confer with its witness and explain
what evidence she could and could not testify about.





[2]  In fact, the
complainant may have said the last comment so softly that the jury could not
have heard her.  The court reporter
recorded the word Asomething@ and
read that back to the trial court, while the trial court believed the word was Ahim.@  The defense
attorney admitted that the court reporter could barely hear her.





[3]  We do not use
this phrase to imply that an assault on the sister would not impact the jury at
all; we use it only to make the point that no detail was given, we do not know
exactly what the comment referred to, and it was mentioned only briefly.  This is not the type of testimony that
normally would inflame a jury and prevent it from following the court=s instruction.





[4]  Double
jeopardy concern is not a valid reason for wanting an election.  If the State does not elect, it is barred
from prosecuting in the future any offense within the scope of the indictment
and for which evidence was introduced at trial. 
Goodbread v. State, 967 S.W.2d 859, 860B61 (Tex. Crim. App. 1998).  So, theoretically, the defendant is more
protected from prosecution for multiple offenses if the State does not elect
than if it does.





[5]  Nor does the
State appear to contend that appellant waived the argument.  The State appears to argue that the failure
to raise the issue at trial demonstrates appellant=s inability to establish an alibi, not waiver.





[6]  The State
contends that the right to a unanimous verdict is not constitutional in
nature.  The United States Constitution
clearly does not grant a right to a unanimous verdict.  See Apodaca v. Oregon, 406 U.S.
404, 410B12 (1972).  The
Texas Constitution may grant greater rights than the United States
Constitution, of course.  Hulit v.
State, 982 S.W.2d 431, 437 (Tex. Crim. App. 1998).  The question is therefore whether such a
right exists under the Texas Constitution.

The applicable text of the Texas
Constitution states only that AGrand and petit juries in the District Courts shall be
composed of twelve persons, except that petit juries in a criminal case below
the grade of felony shall be composed of six persons; . . . .  In trials of civil cases in the District
Courts, nine members of the jury, concurring, may render a verdict . . . .@  Tex. Const., art V, ' 13.  This
section does not state that a defendant in a criminal case is entitled to a
unanimous verdict.  It implies so,
however, by limiting its provision for a non-unanimous verdict to only civil
cases.

The Court of Criminal Appeals has also
stated that there is a constitutional right to a unanimous verdict in criminal
cases.  See, e.g., Molandes v.
State, 571 S.W.2d 3, 3 (Tex. Crim. App. 1978) (referring to Athe constitutional right to a unanimous verdict in
felony cases @).  Even when
not expressly stating that the right is constitutional, the Court of Criminal
Appeals has cited the above section of the Texas Constitution for support.  See Brown v. State, 508 S.W.2d
91, 93 (Tex. Crim. App. 1974); see also Midence v. State, 108
S.W.3d 564, 565 (Tex. App.CHouston [14th Dist.] 2003, no pet.) (citing section 13
for the proposition that A[u]nanimous verdicts are required in felony criminal
cases.@).  Absent clear
guidance from the Court of Criminal Appeals that the right to a unanimous
verdict is not constitutional in nature, we follow this authority.





[7]  Although Francis
ultimately is not an election caseCthe
appeal dealt with charge issuesCit is still useful. 
In Francis, two different offenses contained in a single
indictment were charged in the disjunctive so that it was possible for part of
the jury to believe that one offense occurred and for part to believe the other
offense occurred and yet still convict. 
The court reversed because it said it was Apossible@ that the jury might not have been unanimous.  See Francis, 36 S.W.3d at
125.  This sounds like constitutional
error, especially since the Court noted earlier in the opinion Athe importance of a unanimous jury verdict.@  Id.  Thus, if one of the reasons for election is
to ensure a unanimous jury, the failure to require election would seem to be
constitutional error.





[8]  O=Neal was
written in 1988 before the current rules for error analysis and therefore does
not apply the analysis used today.  





[9]  Arguably, lack
of notice does not apply here because appellant never claimed below that he
needed an election to help him in establishing an alibi and on appeal; although
he argues this as a reason for reversal, he points to nothing in the record
that would support the claim and he mentions no specifics.





[10]  Although the Wilson
court concluded the error was harmful, that decision was made using the
lesser standard for non-constitutional error. 
See Wilson, 3 S.W.3d at 226. 





[11]  For all the
offenses, the jury received an Aextraneous offense instruction@ informing it that it could not consider any of the
offenses unless it found beyond a reasonable doubt that the defendant committed
them and even then it could consider them only Ain
determining the motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident of the defendant . . . in
connection with the offense . . . alleged in the indictment . . . .@  This
instruction was appropriate, but it did not clear up any confusion on the jury=s part concerning which of the alleged offenses the
State would rely on for conviction.  





[12]  The following
is typical of much of the testimony the complainant gave.

Q.  And now, let=s move
into the summer of 2000 and the fall of 2000. 
Did everything that you=ve discussed, that you told . . . the jury both
yesterday and today, take place like you described?  Did it keep happening?

A.  During the summer, yes it did, somewhat
because we were together.  But when I
found out there was a possibility of going to move we broke up for a small
period of time.

Q. 
Now . . . from the spring and summer of 2000, where did this go on?

A.  Mainly at his house whenever his fiancé or
girlfriend, Amber, wasn=t around.

 . . . 

Q.  And did . . . what you testified to yesterday
about him placing his finger in your vagina. . . . and his placing his mouth on
your private, did those things continue, aside from the little break points
there[,] in the summer of and fall of 2000?

A.  Yes.





[13]  In fact, on
this record, a traditional harm analysis is essentially impossible.  Appellant does claim that the failure to elect denied him
effective appellate review of the sufficiency of the evidence; however, he does
not raise a separate sufficiency claim, and, more importantly, he does not cite
any authority or record references to aid us in any review.  As a result, he has waived this particular
claim.  However, this is an additional reason that
the failure to elect can harm a defendant; when an offense has occurred
numerous times, as here, appellate review can be hampered to such an extent
that it is impossible to do. 





[14]  An argument
could be made that Rodriguez, holding that general testimony of Ait happened maybe 20 or 30 times@ was sufficient, 104 S.W.3d at 91, conflicts with O=Neal,
holding that no election was required when details of one offense were given
but otherwise the testimony showed that it occurred Aon a regular basis,@ 746
S.W.2d at 770, 772B73.  In Rodriguez,
the argument was made that Athe usual remedy of an election in cases like this
does not apply here because >it would have been impossible for the State to make an
election in the absence of any testimony distinguishing one incident from
another.=@  104 S.W.3d at
91.  The court held that the State Acould have easily made an election.@  Id.  It could have elected A>at least one occurrence= instead
of >maybe 20 or 30=
occurrences.@  Id.  Yet, in O=Neal, the
court held that testimony that the offense occurred Aon a regular basis@ would
not confuse the defendant about which offense the State had chosen to prosecute
because it presented details of only one offense and argued only that offense
in closing argument.  746 S.W.2d at 770,
772B73.  Thus, in
one case, testimony of Amaybe 20 or 30 occurrences@ is sufficient by itself to convict and only requires
an election, but in another case, testimony that the offense occurred Aon a regular basis@
apparently is not detailed enough to require an election when coupled with
detailed testimony of one incident.  See
Rodriguez, 104 S.W.3d at 91; O=Neil, 746 S.W.2d at 770, 772B73.





[15]  Some improper
jury arguments could be considered constitutional error if the prosecutor=s remarks violated a constitutional issue.  See Ortiz v. State, 999 S.W.2d at 606
n.3; Thompson v. State, 89 S.W.3d 843 (Tex. App.CHouston [1st Dist.] 2002, pet. ref=d).