**Dickie Bruce WILSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–97–090–CR.**

Court of Appeals of Texas, Waco.

Oct. 6, 1999.

Douglas H. Parks, Dallas, for appellant.

John Vance, Criminal District Attorney, Anne B. Wetherholt, Asst. District Attorney, Dallas, Matthew Paul, State's Attorney, Austin, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Chief Justice McDONALD (retired).

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Dickie Bruce Wilson of aggravated sexual assault of a child. *See* Act of July 18, 1987, 70th Leg., 2d C.S., ch. 16, § 1, 1987 Tex. Gen. Laws 80, 80 (amended 1993) (current version at Tex. Pen.Code Ann. § 22.021(a)(1)(B)(i), (2)(B) (Vernon Supp.1999)). Wilson pleaded true to two prior felony theft convictions alleged to enhance him to the level of an habitual offender. The court sentenced him to imprisonment for life. Wilson claims in three related points that: (1) the court erred by failing to require the State to elect the act on which it would rely for conviction; and (2) counsel rendered ineffective assistance by failing to request an election at the conclusion of the State's case in chief and by failing to request limiting instructions on extraneous offenses admitted in evidence (two points).

## BACKGROUND

The indictment alleges in pertinent part that on or about March 23, 1992 Wilson: caus[ed] the penetration of the female sexual organ of [M.W.], a child, by an object, to-wit: the sexual organ of DICKIE BRUCE WILSON, and at the

time of the offense, the child was younger than 14 years of age.

M.W. was born in April 1980. She testified that she could recall Wilson sexually assaulting her by sexual intercourse[1] as early as when she was nine. M.W. told the jury of numerous occasions on which Wilson sexually assaulted her during the six years he had a relationship with her mother. The evidence reflects that a doctor diagnosed M.W. to be twelve weeks pregnant on April 21, 1992. M.W. recounted that during the months preceding this diagnosis, Wilson sexually assaulted her once or twice per week. Wilson abandoned M.W. and her mother in early April before the pregnancy diagnosis.

M.W.'s mother took her to a clinic where her pregnancy was terminated on May 2. Two years later, M.W. told her father about the sexual abuse and her pregnancy.[2] Her father told her stepmother, who took her to the police department to press charges.

Before opening statements, Wilson asked the court to require the State to elect the specific act of sexual intercourse on which it would rely to obtain his conviction. The court overruled Wilson's request and granted him "a continuing objection throughout the remainder of this trial . . . that the Court is not ordering the State to elect the date of the alleged offense that's forming the basis of this prosecution."

## FAILURE TO REQUIRE ELECTION

■ Wilson contends in his first point that the court erred by not requiring the State to elect the particular instance of sexual intercourse on which it would rely to obtain his conviction. The State responds that the error, if any, is harmless.

■ Generally, the State must elect the specific act on which it will rely for conviction when the indictment alleges one sexual assault but the evidence shows multiple assaults. *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex.Crim.App.1988). When an election is required:

> [t]he trial court in its discretion may order the State to make its election at any time prior to the resting of the State's case in chief. However, once the State rests its case in chief, in the face of a timely request by the defendant, the trial court *must* [emphasis added] order the State to make its election. Failure to do so constitutes error.

*Id.* at 772; *accord Scoggan v. State*, 799 S.W.2d 679, 680 & n. 3 (Tex.Crim.App. 1990); *Crawford v. State*, 696 S.W.2d 903, 905–07 (Tex.Crim.App.1985); *Bates v. State*, 165 Tex.Crim. 140, 141–42, 305 S.W.2d 366, 368 (1957). An exception to the election requirement occurs when "several acts of intercourse were committed by one continuous act of force and threats and are part of the same criminal transaction." *O'Neal*, 746 S.W.2d at 771.

The State does not argue that the exception applies in this case. In *O'Neal*, *Crawford*, and *Bates*, the Court held that an election was required because more than one criminal transaction had been shown. *O'Neal*, 746 S.W.2d at 771–72; *Crawford*, 696 S.W.2d at 905–07; *Bates*, 165 Tex. Crim. at 141–42, 305 S.W.2d at 368. The various encounters shown by the evidence in Wilson's case are markedly similar to the ones proved in those cases. *See O'Neal*, 746 S.W.2d at 770–71; *Crawford*, 696 S.W.2d at 904–05; *Bates*, 165 Tex. Crim. at 140–41, 305 S.W.2d at 367. Accordingly, we conclude the exception to the general rule does not apply.

Wilson asked the court to require the State to elect the offense upon which it intended to rely for his conviction. The court erred by refusing his request. *Id.* Therefore, we must determine whether Wilson was harmed by this error.

---

**1.** M.W. recalled Wilson fondling her the first night they met, after her mother brought him home from a bar. She was six years old at the time.

**2.** M.W.'s mother never told M.W.'s father about the sexual abuse or the pregnancy for fear he would seek to terminate or restrict her parental rights.

Wilson suggests that this is an error of constitutional magnitude because the absence of an election deprived him of "notice of the specific transaction relied upon by the State" to obtain his conviction. However, the Court of Criminal Appeals has recently determined that the federal and state constitutions do not require an indictment to give notice of "the precise date when the charged offense occurred, or [even] a narrow window of time within which it must have occurred."[3] *Garcia v. State*, 981 S.W.2d 683, 685–86 (Tex.Crim. App.1998). From this we conclude that a failure to require an election by the State is not an error of constitutional dimension.

Because no constitutional error is involved, we must determine whether Wilson's "substantial rights" were affected by the court's failure to require an election. *See* TEX.R.APP. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). When we assess harm under rule 44.2(b):

> we review the entire record to determine whether the error had more than a slight influence on the verdict. If we find that it did, we must conclude that the error affected the defendant's rights in such a way as to require a new trial. If we have grave doubts about its effect on the outcome, we should find that the error was such as to require a new trial. Otherwise, we should disregard the error.

*Fowler v. State*, 958 S.W.2d 853, 866 (Tex. App.—Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex.Crim.App.1999).

In *O'Neal*, the State's election was untimely because the State did not make it until the close of all the evidence. *O'Neal*, 746 S.W.2d at 771. The Court of Criminal Appeals determined that the trial court's erroneous failure to require a timely election was harmless because the testimony "focused clearly" on a particular act upon which the State intended to rely for conviction. *Id.* at 772. The victim in *O'Neal* testified generally that her stepfather "had been having sexual intercourse with her on a regular basis since she was five years old. She then gave a detailed account of an act of intercourse that occurred on or about April 24, 1984." *Id.* at 770. In Wilson's case however, the testimony is not so clearly focused.

M.W. did testify generally that Wilson had sexually abused her in various manners since she was six. She also testified about several specific occasions when he sexually assaulted her. She described two specific occasions when he sexually assaulted her by contact and two others when he made her perform oral sex on him. She testified to an occasion when she was ten or eleven during which Wilson sexually assaulted her with a hotdog and a cucumber. She described an instance when she was nine during which Wilson sexually assaulted her by penetrating her vagina with his penis as alleged in the indictment. She described a second instance in March 1992 when he assaulted her in this manner after she stayed home from school because of her morning sickness due to the yet-to-be-diagnosed pregnancy. She testified that he engaged in sexual intercourse with her once or twice (and "sometimes more") per week in the months leading up to when he abandoned her and her mother. Under the indict-

---

**3.** When the indictment does not allege the exact date of the offense, the accused must be prepared to defend against any offense shown by the evidence to have occurred within the applicable limitations period. *See Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex.Crim.App. 1997). When the State presents evidence of multiple offenses, this rule arguably places the accused in a difficult position of having to defend himself against each offense shown to have occurred during the limitations period. However, the remedy for this dilemma lies in the election which the trial court erroneously denied Wilson in this case. *See Yzaguirre v. State*, 957 S.W.2d 38, 39–40 (Tex.Crim.App. 1997) (Meyers, J., concurring).

ment, the jury could have found Wilson guilty of any of these latter offenses, beginning with the incident that occurred when M.W. was nine.

Unlike *O'Neal*, in which the evidence "focused clearly" on a particular offense, the State's evidence in Wilson's case points to two particular incidents for which the jury could have found Wilson guilty and innumerable other instances which M.W. generally described for which the jury could have found Wilson guilty. The State's closing argument confirms that it was not relying on a particular instance to support Wilson's conviction. The prosecutor described each of the instances noted above in detail. He talked about the State's burden of proof and said, "We may overprove our case, if the evidence exists, that there may have been more than one violation." He relied on the fact of M.W.'s pregnancy, which apparently did not result from the March 1992 assault,[4] as evidence that Wilson sexually assaulted M.W.

Because of the uncertainty concerning which offense the State relied on for Wilson's conviction, we conclude that the court's error in failing to require the State to elect the offense on which it would seek a conviction "had more than a slight influence on the verdict" and thus "affected [Wilson's] rights in such a way as to require a new trial." *Fowler*, 958 S.W.2d at 866; *see also* Tex.R.App. P. 44.2(b). Accordingly, we sustain Wilson's first point.

Because we have found error requiring reversal with respect to the court's failure to require an election, we need not address Wilson's second and third points.

We reverse the judgment and remand this cause for further proceedings consistent with this opinion.

Chief Justice McDONALD (retired) not participating.

---

4. We draw this conclusion from two places in the record. First, M.W. testified she experienced vomiting "every morning" during that time period up to the time of the pregnancy diagnosis. Second, the physician diagnosed M.W. to be twelve weeks pregnant on April 21, 1992. Thus, assuming an accurate diagnosis, her pregnancy resulted from an act of intercourse in late January or early February of that year.