Anthony DIXON, Appellant

v.

The STATE of Texas, Appellee.

No. 14–03–01259–CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 21, 2005.

Joseph W. Varela, Houston, TX, for appellant.

David Bosserman, Angleton, TX, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## MAJORITY OPINION

JOHN S. ANDERSON, Justice.

Appellant Anthony Dixon was charged by indictment with aggravated sexual assault of a child. The jury returned a guilty verdict and assessed punishment at thirty-five years' confinement in the Texas Department of Criminal Justice, Institutional Division. In four points of error, appellant contends: (1) the trial court erred by failing to require the State to elect a specific act it would rely upon for conviction; (2) the evidence is legally insufficient to support the conviction; (3) the trial court erred by failing to grant his special requested charge; and (4) the trial court erred by failing to grant a mistrial because of improper prosecutorial argument. We reverse and remand.

## I. FAILURE TO REQUIRE AN ELECTION

■ In his first point of error, appellant contends the trial court erred when it failed to require the State to elect a specific act it would rely upon for the indicted offense. Specifically, appellant argues this error denied him of his right to have a unanimous jury verdict. The record reflects the trial court did not require the State to make an election.[1] Appellant moved for an election at various stages of the trial, including at the resting of the State's case in chief, and at the closing of all the evidence.[2] But the court ultimately denied the relief.

### A. Was Appellant Entitled to an Election?

■ The general rule is, "where one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would rely for conviction." *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex. Crim.App.1988). Before the State rests, the trial court has discretion in directing the State to make an election. *See id.* at 771–72. "However, once the State rests its case in chief, in the face of a timely request by the defendant, the trial court *must* [emphasis added] order the State to make its election. Failure to do so constitutes error." *Id.* at 772.[3]

Here, appellant was indicted for aggravated sexual assault of a child younger than fourteen years of age. Specifically, the indictment alleged appellant committed aggravated sexual assault of a child by causing his sexual organ to contact the sexual organ of the complainant. During the State's case in chief, the complainant, E.M., testified appellant, her uncle, periodically resided at her mother's apartment and shared a bedroom with the complainant. Appellant slept on a couch in her bedroom while she slept in her bed. E.M. testified that while she slept, appellant would get into her bed, remove his clothes as well as hers, and cause his sexual organ to contact her sexual organ.

During the State's case in chief, the State asked E.M. if she remembered how many times this happened. She said it happened "one-hundred times." E.M. testified it happened every night that appel-

1. The State argues it made an election. After the State's case in chief, appellant moved to require the State to elect. Outside the presence of the jury, the State said they were relying on the events that occurred on July 4, 2002. The trial court refused appellant's request to incorporate the election in the jury charge. The State contends the specific date in the charge and the limiting instruction regarding evidence of extraneous offenses negated the need for an election, or in the alternative, caused appellant no harm. We disagree. The application paragraph in the jury charge was not limited to an event on July 4, 2002. By its language, the charge permitted the jury to convict for any offense proved to have been committed within the ten year period prior to the filing of the indictment. We cannot hold the date of July 4, 2002 in the application paragraph, as modified by the limitations paragraph immediately preceding it, constituted an election contemplated by *O'Neal v. State*, 746 S.W.2d 769, 771 (Tex.Crim.App.1988).

2. Thus, appellant preserved error by his motion to require election. *O'Neal*, 746 S.W.2d at 771 n. 3.

3. Case law has given four reasons for this rule: (1) to protect the accused from the introduction of extraneous evidence; (2) to minimize the risk of the jury choosing to convict based on all of the allegations together; (3) to ensure unanimous verdicts; and (4) to give the defendant notice of the particular offense the State intends to rely upon for prosecution and afford the defendant an opportunity to defend. *See Phillips v. State*, 130 S.W.3d 343, 349 (Tex.App.-Houston [14th Dist.] 2004, State's pet. granted; appellant's pet. ref'd.).

lant stayed at her home and "only one time in the day time." The State presented evidence that six stains on E.M.'s bed comforter tested positive for the presence of semen, and Dr. Sheila Lahoti, who examined E.M., testified that she believed there were multiple incidents of vaginal trauma. During closing argument, the State argued that because of E.M.'s youth, she did not really know the exact number of times appellant committed this offense; however, the State argued E.M.'s testimony of "one-hundred times" really meant "it happened a bunch of times."

Based on E.M.'s testimony, more than one act of sexual contact was shown by the evidence, but only one act of contact was alleged in the indictment. Because appellant moved for an election at the close of the State's case in chief, failure of the trial court to order the State to make an election constitutes error. *O'Neal*, 746 S.W.2d at 772.

### B. Was the Error Harmful?

Appellant contends the trial court's denial of his timely motion to elect effectively denied his right to have a unanimous verdict.

■ The appellant's right to require the State to elect is a right of constitutional proportions. *Phillips*, 130 S.W.3d at 352. This court has held that when the reason underlying the election requirement is unanimity, the error is constitutional in nature.[4] *Id.* at 351–52.

■ Where the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt the error did not contribute to the conviction or punishment. TEX.R.APP. P. 44.2(a). A constitutional error within the meaning of Rule 44.2(a) is an error that directly offends the United States or Texas Constitution, without regard to any applicable statute or rule. *Durham v. State*, 153 S.W.3d 289, 292 (Tex.App.-Beaumont 2004, no pet.) (citing *Tate v. State*, 988 S.W.2d 887, 890 (Tex.App.-Austin 1999, pet. ref'd)).

The *O'Neal* court was faced with facts similar to those in the case at bar in that the State was not, despite repeated motions, required to elect which sexual assault it would rely upon for conviction until the close of all the evidence. However, in *O'Neal*, the trial court's failure to require the State to make a *timely* election as to the offense upon which it sought conviction was held to be harmless because even though many instances of improper conduct were described, the focus was on one sexual assault that occurred on April 24, 1984. Both the complainant and her stepsister testified in detail about the events of that evening; thus, by the close of the State's case, it was clear that the act upon which the State would rely for conviction occurred on April 24, 1984. 746 S.W.2d at 772. Accordingly, the *O'Neal* court held the delayed election was error, but in the context of the trial, it was harmless error. *Id.* at 773.

Here, the State was never required to make an election, and the record did not provide appellant with notice of which assault it would rely upon for conviction, so the harmless error analysis in *O'Neal* is not applicable. The indictment in this case charged the commission of an offense on

---

4. Texas law requires unanimous verdicts in felony criminal cases. *Midence v. State*, 108 S.W.3d 564, 565 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (citing TEX. CONST. art. V, § 13, TEX.CODE CRIM. PROC. ANN. art. 36.29, and *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim.App.1991)).

or about July 4, 2002. The jury charge contained an application paragraph allowing conviction if the jury found beyond a reasonable doubt the defendant committed the offense on or about July 4, 2002. The charge also advised the jury that the State was not required to prove the offense occurred on the exact date alleged in the indictment, but was allowed to prove the offense to have been committed any time *prior* to the filing of the indictment so long as the offense occurred within ten years of the filing of the indictment, which was filed October 10, 2002. Thus, the jury was allowed to convict appellant upon evidence sufficient to meet the beyond-a-reasonable-doubt standard, for any offense after October 1992 and before October 10, 2002.[5]

The complainant's testimony referred to numerous assaults by appellant during the night, but only one that occurred during the day. There was a specific date in the indictment, July 4, 2002, which was repeated in the application paragraph of the jury charge. There was, however, no testimony regarding a specific assault on any particular date. The State could have eas-

ily elected an offense upon which it would rely for conviction. However, all of appellant's motions to require the State to elect an offense were denied. The State proved that the assaults occurred, but no one date was emphasized. Given the broad spectrum of choices available to the jurors, some may have selected a nighttime offense, while others may have chosen the daytime assault. Accordingly, the jury was capable of returning less than an unanimous verdict.

We cannot conclude beyond a reasonable doubt the trial court's failure to require the State to elect the act upon which it would rely for conviction did not contribute to appellant's conviction. Thus, the trial court's error was harmful, and we sustain appellant's first point of error.

Apparently ignoring the harm analyses in this court's recent opinions in *Phillips* and *Farr v. State*, 140 S.W.3d 895 (Tex. App.-Houston [14th Dist.] 2004, pet. granted), the dissent would hold the trial court's error harmless.[6] In *Phillips*, where multi-

---

5. The wide latitude in offense dates upon which the jury could convict based on the limitations language in the charge was emphasized by the State in its closing argument as follows:

> Young children are inexperienced and you know that, but they don't get dates. So what the law says is, "That's fine, just within 10–years of indicting this man, you've got to prove that it happened." She is only 6. The State has proven the date.

6. If wishes were horses, beggars would ride. The dissent would hold the trial court's refusal to grant appellant's request for an election as to the offense upon which conviction was sought was error, but harmless because the error is "purely technical," and the "harm espoused by [appellant] is absolutely theoretical." The dissent is not, however, writing on a clean slate; indeed, the dissent's position has no supporting authority, and conflicts with opinions from this court. We have relied, in part, on *O'Neal* where the court held

the trial court's refusal to grant appellant's election request until the close of all the evidence was error, but harmless error because the evidence provided notice to the appellant of the act of intercourse the State would rely upon for conviction. 746 S.W.2d at 772–73. No such specific evidence was presented here, and, because the record here did not provide Dixon with notice of the act the State would rely upon for conviction, the dissent may not base it's position on the harmless error analysis in *O'Neal*. Using the dissent's analysis, Dixon was exposed to the risk the jury might choose to convict, not because one or more crimes were proven beyond a reasonable doubt, but because all of them together convinced the jury the defendant was guilty. *Phillips*, 130 S.W.3d at 349. The dissent describes the risk of conviction based on evidence of multiple crimes not meeting the beyond-a-reasonable-doubt threshold as one of the "laudable reasons for the rule requiring an election by the State," but cavalierly discards the risk as purely "theoretical."

ple offenses were charged in the indictment, this court held that, as to two of the indicted offenses, the trial court's refusal to require the State to make an election allowed the jury to reach a non-unanimous verdict, a constitutional error that harmed appellant resulting in a reversal of those convictions and remand of those cases for a new trial. 130 S.W.3d at 358. The court also noted in *Phillips* that " '[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.' " *Id.* at 351 (quoting *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948)). This court reached the same conclusion in *Farr*. There, this court held that where the sexual assault was described in detail more than once, but no specific incident was described, the jury was potentially allowed to reach a non-unanimous verdict and the trial court's error was harmful under Texas Rule of Appellate Procedure 44.2(a). This court reversed the conviction in two cause numbers and remanded them for a new trial. 140 S.W.3d at 900. We are bound by these precedents, and so, too, is the dissent.

## II. LEGAL SUFFICIENCY

■ In his second point of error, appellant argues the evidence is legally insufficient because no evidence was properly before the jury upon which it could base a conviction. Appellant contends that since there was no election, the jury charge instruction limiting the jury's consideration of the extraneous offenses applied to all the evidence admitted, including evidence of the indicted offense.

■ In a legal sufficiency review, we view *all of the evidence* in the light most favorable to the verdict and then determine whether a rational trier of fact could have found *the essential elements of the crime* beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Sufficiency of the evidence is measured by the hypothetically correct jury charge for the case; a charge that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex.Crim.App. 1997). This standard "ensures that a judgment of acquittal is reserved for those situations in which there is an actual failure in the State's proof of the crime rather than a mere error in the jury charge submitted." *Id.* at 240. We presume any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and we defer to that resolution. *Jensen v. State*, 66 S.W.3d 528, 533 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). The testimony of a victim standing alone is sufficient to support a conviction for sexual assault. *Id.* at 534.

In this case, the jury charge accurately defined the elements of the offense of aggravated sexual assault of a child. *See* TEX. PEN.CODE ANN. § 22.021(a)(1)(B)(i), (iii) (Vernon Supp.2005). Viewing all of the evidence in the light most favorable to the verdict, we find a rational trier of fact could have found the essential elements of the offense of aggravated sexual assault of a child as alleged in the indictment. The evidence supporting the verdict includes the complainant's testimony that appellant would get in her bed while she was asleep, take off his and her clothes, and cause his sexual organ to contact her sexual organ; the complainant testified this occurred

"one hundred" times. The State presented evidence of semen stains on the complainant's comforter, and Dr. Lahoti testified the complainant had vaginal trauma. The evidence also established the complainant was younger than 14 years of age and was not married to appellant.

In this case, there is no failure of the State's proof of the crime alleged. The harm to appellant occurred because of the possibility that not every member of the jury found appellant guilty of the same crime. Theoretically, each juror could have found appellant guilty of a separate offense that occurred "on or about July 4, 2002." The jury instruction with an extraneous offense charge did not modify the evidence presented to the jury.[7] Viewing the evidence in the light most favorable to the verdict, we find a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Appellant's second point of error is overruled.

### III. OTHER ISSUES

Appellant's third point complains the trial court erred in refusing to incorporate a charge limiting the jury's consideration to one case for the purpose of a conviction. Appellant acknowledges in his brief this issue was brought up in his discussion of his motion to elect. Because we have sustained appellant's first point of error based on the trial court's failure to require the State to make an election as to the offense for which it would rely for a conviction, we need not address this collateral issue.

Appellant's fourth point complains of the trial court's failure to grant a mistrial based on allegedly improper jury argument by the State at the punishment hearing. We do not address this issue because we are remanding for a new trial.

Accordingly, we overrules points of error three and four.

### CONCLUSION

We have determined the trial court committed reversible error when it failed to require the State to make an election as to which offense identified by the evidence it would rely upon for a conviction. Accordingly, we reverse the judgment of the trial court, and remand the case for a new trial.

FROST, J., concurring.

HUDSON, J., dissenting.

KEM THOMPSON FROST, Justice, concurring.

The majority opinion is correct in its application of current case law and precedent. According to *Phillips*, the State's refusal to elect one episode of sexual assault and the trial court's failure to require the State to do so is error of constitutional magnitude, requiring a constitutional harm analysis under Texas Rule of Appellate Procedure 44.1(a). *Phillips v. State*, 130 S.W.3d 343, 351 (Tex.App.-Houston [14th Dist.] 2004, State's pet. granted; appellant's pet. ref'd). The majority opinion correctly applies the constitutional error standard and correctly concludes the error is harmful because the evidence describes general statements of sexual assault rather than one specific incident, allowing for a non-unanimous verdict. *Farr v. State*, 140 S.W.3d 895, 901 (Tex.App.-Houston [14th Dist.] 2004, pet. granted).

However, there is currently a conflict in the courts of appeals as to whether to

---

7. In *Rodriguez*, the court held a minor's testimony that appellant delivered cocaine to her "maybe 20 or 30 times" during the nine-month period preceding the date alleged in the indictment was not evidence of extraneous offenses. *Rodriguez v. State*, 104 S.W.3d 87, 91 (Tex.Crim.App.2003).

apply a constitutional or non-constitutional harm analysis. *Compare Phillips,* 130 S.W.3d at 351 (applying constitutional harm analysis) *with Wilson v. State,* 3 S.W.3d 223, 226 (Tex.App.-Waco 1999, pet. ref'd) (applying non-constitutional harm analysis), *and Cates v. State,* 72 S.W.3d 681, 696–97 (Tex.App.-Tyler 2001, no pet.) (adopting non-constitutional analysis based on *Wilson*). The Court of Criminal Appeals has recently decided to review *Phillips* and *Farr* with the likely goal of resolving the conflict among the courts of appeals. In the case at bar, however, even a non-constitutional error analysis shows that the error is harmful to appellant and therefore warrants a new trial.

Non-constitutional errors are to be disregarded unless they affect substantial rights. Tex.R.App. P. 44.2(b). An error affects a substantial right when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex. Crim.App.1997). In *Johnson v. State,* 43 S.W.3d 1, (Tex.Crim.App.2001), the Court of Criminal Appeals explained the non-constitutional harm analysis, stating:

> If, when all is said and done, the conviction is sure [sic] that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand ... [b]ut if one cannot say, with fair assurance ... that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry ... is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Johnson,* 43 S.W.3d at 4 (quotations omitted). Our state constitution requires unanimity in all felony trials. *See* Tex. Const. art. V, § 13. A unanimous jury verdict ensures that the jury agrees on the facts underlying an offense and not merely on the violation of a statute. *Francis v. State,* 36 S.W.3d 121, 125 (Tex.Crim.App. 2000). The unanimity requirement is not met when a jury risks convicting the defendant on different acts instead of agreeing on the same act for conviction. *Id.*

The Waco Court of Appeals conducted a non-constitutional harm analysis on nearly identical facts in *Wilson. Wilson,* 3 S.W.3d at 226. In that case, the State's evidence focused on two specific incidents of sexual assault for which the jury could have convicted the defendant and other general statements of abuse from the complainant for which the jury also could have convicted the defendant. *Id.* at 227. The *Wilson* court held that the failure to elect a specific offense led to a potential lack of unanimity in the verdict. *See id.* Consequently, the failure to elect had "more than a slight influence on the verdict" and affected the defendant's rights sufficiently to require a new trial. *Id; but see Cates,* 72 S.W.3d at 696–97 (holding failure to elect with indistinct complainant testimony was harmless, without considering unanimity requirement).

The facts in the instant case present the error more succinctly. Due to the high number of incidents described by the complainant, each juror could have chosen to convict appellant based on a separate incident. The possibility that the jury convicted appellant without agreeing on a specific instance of criminal conduct had "more than a slight influence" on the verdict. Under this court's precedent, failure to elect is constitutional error and the majority opinion correctly applies the harm analysis for constitutional error. Nevertheless, a failure to elect among multiple episodes of conduct warrants a new trial even under a non-constitutional harm analysis.

J. HARVEY HUDSON, Justice, dissenting.

Where one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the general rule is that the State must elect the act upon which it will rely for conviction. *O'Neal v. State,* 746 S.W.2d 769, 771 (Tex.Crim.App.1988). The reason for the rule is to protect the accused (1) from the introduction of extraneous offenses, (2) from prejudice arising solely from the sheer number of alleged offenses, (3) by ensuring a unanimous verdict, and (4) by giving him notice of the particular offense upon which the State intends to rely. *Phillips v. State,* 130 S.W.3d 343, 349 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd). These are all laudable reasons for the rule requiring an election by the State. However, "... the rule follows where its reason leads; where the reason stops, there stops the rule."[1]

Here, the complainant, a six-year-old child, was sexually assaulted on a regular basis. Of the approximately one hundred assaults, all took place in the complainant's bed and all, but one, occurred at night. On account of the complainant's minority, she could not temporally distinguish one assault from another. In light of the circumstances, what kind of election was possible? Appellant suggests the State could have elected to rely upon the one "daytime" offense. Certainly, that would have been one means of distinguishing a specific offense. However, I can find no authority to suggest that the State, due solely to the victim's minority, must elect the one "daytime" offense to the exclusion of ninety-nine "nighttime" offenses. Moreover, the State had other means of electing a specific offense—it could, for example, have chosen the first assault, the tenth assault, the fifty-seventh assault, etc. In this regard,

an election was "theoretically" possible. Thus, in "theory," the trial court erred in refusing to compel the State to make such an election. However, appellant bears the burden of showing some actual, not just theoretical, harm. *Hughes v. State,* 897 S.W.2d 285, 296 (Tex.Crim.App.1994); *Webber v. State,* 29 S.W.3d 226, 236 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd); *Johnson v. State,* 981 S.W.2d 759, 764 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd).

Appellant suggests he was prejudiced by the possibility of a non-unanimous verdict. Unanimity in this context means that each and every juror must agree that the defendant committed the same, single, specific criminal act. *Thanh Cuong Ngo v. State,* No. PD-0504-04, —— S.W.3d ——, 2005 WL 600353, at *4 (Tex.Crim. App. Mar.16, 2005). The nature of the evidence presented here, however, defies any attempted unanimity of the verdict. The complainant testified generally about what occurred during a typical assault. She then added that she was the victim of approximately one hundred such assaults. An older victim may well have been able to distinguish one offense from another by date, some distinctive fact, some unusual bit of conversation, etc. Here, however, the victim was a very young child. If the State had "elected" to rely upon assault number twenty-nine, the jurors would have had no better means of distinguishing it from the ninety-nine extraneous assaults than did the complainant. Thus, in an abstract sense, four jurors could have convicted appellant based on the evidence offered regarding assault number forty-three, four jurors could have convicted him on the evidence of assault number sixty-nine, and four jurors could have convicted him on the evidence of assault num-

---

1. K. Llewellyn, The Bramble Bush at 157–58 (Dobbs Ferry, New York: Oceana, 1981).

ber eighty-two because the evidence for all these assaults was the same. Because the jurors could not possibly distinguish one offense from another, unanimity of their verdict regarding a specific offense was also impossible.

Perhaps this fact alone should dictate our disposition of this case. However, unless we are prepared to say that young victims may be violated with impunity, I am not disposed to hold that the constitutional right to a unanimous verdict precludes the prosecution of cases like the one presented here. First, while the constitu-tion requires that district court juries "be composed of twelve persons,"[2] it does not expressly require unanimity to the degree specified in *Ngo*, *i.e.*, "the same, single, specific criminal act." *Ngo*, —— S.W.3d at ——, 2005 WL 600353, at *4.[3] Likewise, no statute expressly requires this degree of unanimity.[4]

Further, because the assaults were indistinguishable from one another, jeopardy automatically attached to every assault. *Walker v. State*, 473 S.W.2d 499, 500 (Tex. Crim.App.1971). Thus, appellant was not prejudiced by the danger of repeated pros-

2. *See* Tex. Const. art. V, § 13:

Grand and petit juries in the District Courts shall be composed of twelve persons, except that petit juries in a criminal case below the grade of felony shall be composed of six persons; but nine members of a grand jury shall be a quorum to transact business and present bills. In trials of civil cases in the District Courts, nine members of the jury, concurring, may render a verdict, but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it. When, pending the trial of any case, one or more jurors not exceeding three, may die, or be disabled from sitting, the remainder of the jury shall have the power to render the verdict; provided, that the Legislature may change or modify the rule authorizing less than the whole number of the jury to render a verdict.

3. In *Ngo*, the appellant attempted to use a stolen credit card to purchase a couple of beers at a karaoke bar. *Ngo*, —— S.W.3d ——, 2005 WL 600353, at *1. He was charged with credit card abuse. The Legislature has broadly defined the offense of credit card abuse as being committed when a person presents or uses a credit card knowing he does not have the consent of the cardholder, knowing the card is fictitious, knowing the card is stolen, knowing the card has been revoked, etc. Ngo was indicted for credit card abuse by (1) stealing a credit card, (2) receiving a stolen credit card, and (3) fraudulently presenting a credit card to pay for goods or services. Historically, this would have been viewed as an allegation of various manner and means of committing a single offense. *See Hendrix v. State*, 150 S.W.3d 839, 855–58 (Tex.App.-Houston [14th Dist.] 2004, pet. pending) (Hudson, J., concurring). The rationale being that the State ought to be permitted to allege all of the various statutory violations arising in a single criminal transaction (i.e., in a single "offense") in one indictment to meet the contingencies of evidence that might develop in trial with the view of securing but one conviction. *Id.*

In light of *Ngo* and similar decisions by the Court of Criminal Appeals, a potential double jeopardy crisis is now brewing. *See, for example, Vick v. State*, 991 S.W.2d 830 (Tex. Crim.App.1999). If each manner and means of committing credit card abuse is now a separate offense for purposes of jury unanimity, then it is necessarily a separate offense for jeopardy purposes. Thus, in *Ngo*, for example, the appellant could be separately charged, convicted, and punished for multiple offenses of credit card abuse arising out of a single transaction. No mystical seer is needed to predict that, in time, the right of jury unanimity will be relaxed in favor of more stringent double jeopardy protections.

4. *See* Tex.Code Crim. Proc. Ann. art. 33.01 (Vernon 1989):

(a) Except as provided by Subsection (b), in the district court, the jury shall consist of twelve qualified jurors. In the county court and inferior courts, the jury shall consist of six qualified jurors.
(b) In a trial involving a misdemeanor offense, a district court jury shall consist of six qualified jurors.

ecutions. *Ex parte Goodbread*, 967 S.W.2d 859, 860–61 (Tex.Crim.App.1998); *Ex parte Nagle*, 48 S.W.3d 213, 216 (Tex.App.-San Antonio 2000, no pet.).

Had the State "elected" the first assault, the tenth assault, or the last assault, appellant would have had no greater notice of the offense upon which the State intended to rely; no greater assurance of *real* unanimity of the verdict; and no more *meaningful* limiting instruction regarding "extraneous" offenses. In short, an election under the facts presented here would not have aided appellant one whit.[5]

I am not unmindful of our responsibility to see that appellant has had a fair trial. Further, I would favor a reversal of appellant's conviction if a meaningful election (1) could have been made, and (2) it would have accomplished the aims alluded to in *Phillips*, 130 S.W.3d at 349. But such is not the case here. The harm espoused by appellant is absolutely theoretical. Appellant contends a reversal of the conviction is just, "[b]ut justice, though due to the accused, is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." *Snyder v. Massachusetts*, 291 U.S. 97, 122, 54 S.Ct. 330, 78 L.Ed. 674 (1934). Here, a reversal of the conviction would protect no substantial or constitutional right of the accused. Accordingly, I would find the error harmless beyond any reasonable doubt.

For these reasons, I respectfully dissent.

---

5. Appellant argues the State could have elected to prosecute the one "daytime" offense to distinguish it from the ninety-nine "nighttime" offenses. Certainly, that is true, but to what advantage? Appellant does not inform us how an election of the "daytime" offense have aided him in any greater fashion than if the State had elected the twenty-seventh offense.