Opinion filed July 3, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed July 3, 2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00062-CR 

                                                     __________

 

                                     ISRAEL
RAMON JR., Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                          On
Appeal from the 32nd District Court 

 

                                                          Fisher
County, Texas

 

                                                     Trial
Court Cause No. 3255

 



 

                                             M
E M O R A N D U M   O P I N I O N

The
jury convicted Israel Ramon Jr. of aggravated sexual assault and indecency with
a child by contact and assessed his punishment at seventy years confinement for
the aggravated sexual assault conviction and twelve years confinement for the
indecency conviction.  We affirm.

I.
Background Facts








Ramon
was indicted for aggravated sexual assault of a child, indecency with a child
by contact, and indecency with a child by exposure.  These allegations were
based primarily on the testimony of his oldest daughter, Bonnie Marie Ramon. 
She accused Ramon of fondling her beginning when she was eight or nine and then
starting to place his penis inside her vagina one year later.  According to
Bonnie, this continued until she moved out of the house at age twenty.

Ramon=s guilt was vigorously
contested.  Several friends and family members testified that he never did
anything improper to them, or to their knowledge to anyone else, and that they
never saw any improper contact between Ramon and his daughters.  Ramon=s wife, Christie Ramon,
disputed Bonnie=s
allegations, and Ramon testified on his own behalf and denied any improper
conduct. The jury convicted Ramon of aggravated sexual assault of a child and
indecency with a child by contact.

Ramon
elected to have the jury assess punishment.  He presented several witnesses who
advocated for probation, a probation officer to testify about the conditions
typically imposed on probationers, and he testified on his own behalf.  The
jury assessed his punishment at seventy years confinement for the aggravated
sexual assault conviction and twelve years confinement for the indecency
conviction.

II.
Issues on Appeal

Ramon
challenges his conviction with four issues.  He argues that the trial court
erred by not sua sponte providing the jury with a reasonable doubt instruction
when extraneous offense evidence was offered, that the evidence was legally and
factually insufficient to prove his guilt, that trial counsel was ineffective
by offering into evidence during the punishment phase of the trial a taped
telephone conversation between Ramon and Bonnie, and that he was deprived of a
unanimous jury verdict.

                                                                    III. 
Analysis

A.  Was the
Trial Court Required to Sua Sponte Provide a Reasonable Doubt Instruction when
Extraneous Offense Evidence was Offered During the Guilt/Innocence Phase of the
Trial?

 








Ramon
was indicted for aggravated sexual assault of a child, indecency with a child
by contact, and indecency with a child by exposure.  The indictment alleged
that each of the charged offenses occurred on or about July 23, 1994.  Ramon
argues that the State offered extraneous offense evidence by eliciting testimony
that he assaulted Bonnie over an eleven-year period of time and that he also
assaulted Bonnie=s
sister, Brenda Ramon.  Ramon contends that the trial court was required to sua
sponte instruct the jury that, before it could consider this extraneous offense
evidence, it must first find that the State had proved those offenses beyond a
reasonable doubt.  The Texas Court of Criminal Appeals has previously rejected
that argument, holding that no duty exists absent a request from defense
counsel.  See Delgado v. State, 235 S.W.3d 244, 254 (Tex. Crim. App.
2007).  Issue one is overruled.

B. 
Was the Evidence Legally and Factually Sufficient?

Ramon
next contends that the evidence was legally and factually insufficient to
support his convictions.

1.  Standard of Review.

To
determine if the evidence is legally sufficient, we review all of the evidence
in the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Jackson
v. State, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).  The factfinder is the
sole judge of the credibility of the witnesses and the weight to be given their
testimony.  Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App.
1992).  The factfinder may choose to believe or disbelieve all or any part of
any witness=s
testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

To
determine if the evidence is factually sufficient, the appellate court reviews
all of the evidence in a neutral light.  Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006).  Then, the reviewing court determines whether
the evidence supporting the verdict is so weak that the verdict is clearly
wrong and manifestly unjust or whether the verdict is against the great weight
and preponderance of the conflicting evidence.  Id. at 414-15.

2.  Legal Sufficiency. 

Bonnie
testified that her father started touching her inappropriately when she was
eight or nine years old.  This continued for approximately one year, and then
he began putting his penis into her vagina.  At first, he penetrated her from
behind, but he later started getting on top of her.  Bonnie testified that he
continued doing this until she moved out of the house at age twenty.  She did
not report her father to anyone because she was afraid to do so.  Brenda
testified that she saw her father doing inappropriate things to Bonnie once on
the living room floor.








This
evidence is legally sufficient.  Bonnie=s
testimony establishes each element of the charged offenses.  Ramon argues that
there was no evidence of intent to arouse or gratify his sexual desire but
acknowledges that intent can be inferred from the defendant=s conduct and the
surrounding circumstances.  See McKenzie v. State, 617 S.W.2d 211, 216
(Tex. Crim. App. 1981).  There is no rational explanation for Ramon=s conduct other than an
intent to arouse or gratify his sexual desire.  A reasonable juror could have
determined that Bonnie=s
testimony was credible and, therefore, concluded beyond a reasonable doubt that
Ramon was guilty of the charged offenses.  See Tex. Code Crim. Proc. Ann. art. 38.07 (Vernon 2005) (victim=s testimony is sufficient
to support a conviction for a sexual offense).

3.  Factual Sufficiency.

Ramon=s factual sufficiency
challenge argues that, when the evidence impeaching Bonnie=s testimony and his
exculpatory evidence is considered, the verdict is contrary to the overwhelming
weight of the evidence and is clearly wrong and unjust.  Bonnie provided a
written statement to law enforcement officers.  In that statement, she said
that Ramon took the doors off in the house to keep them from hiding things.  At
trial, she testified that he did not remove any doors.  In her statement,
Bonnie said her father would get into bed between her and her sister and that
he would have sex with both of them.  At trial, she testified that she did not
know her father was having sex with Brenda until two years ago when Brenda told
her so.  There were also inconsistencies in Bonnie=s description of whom she first talked to
about her father=s
behavior and when she first talked to them. 

Ramon
called several family members who lived with them for some period of time. 
Each testified that they did not see anything unusual going on between Ramon
and Bonnie and that Bonnie never complained to them about being abused.  One of
Ramon=s nieces, who
lived with Ramon and his family for several years, testified that her uncle
never behaved inappropriately with her.  Christie Ramon, Ramon=s wife and Bonnie=s mother, testified that
Bonnie started taking anti-depression medication four years ago in response to
her grandfather=s
death.  Christie testified that it was impossible for Ramon to have done what
Bonnie alleged because she would have heard or seen something.  She blamed
Bonnie=s allegation on
a financial dispute between Ramon and Bonnie=s
boyfriend.








Although
we analyze all of the evidence presented at trial, the trier of fact is the
sole judge of the facts, the credibility of the witnesses, and the weight given
to their testimony.  Sharp, 707 S.W.2d at 614.  We may not substitute
our own judgment for that of the factfinder. Johnson v. State, 23 S.W.3d
1, 12 (Tex. Crim. App. 2000).  The jury determined that Bonnie=s testimony was credible
and that Ramon=s was
not.  We may not alter that assessment because the jury alone determines what
weight to place on contradictory testimonial evidence.  Cain v. State,
958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997).  

The
Texas Court of Criminal Appeals has held that the victim=s testimony alone is sufficient to support a
conviction for aggravated sexual assault.  Garcia v. State, 563 S.W.2d
925, 928 (Tex. Crim. App. 1978).  Ramon correctly points out that he introduced
evidence to impeach Bonnie=s
testimony, that he and other family members contradicted Bonnie=s testimony, and that he
provided the jury with reasons for determining that her story was implausible. 
Why the jury rejected Ramon=s
defense and accepted Bonnie=s
testimony we do not know, but we cannot say that a rational juror would have
been unable to reach this decision.  The evidence is factually sufficient, and
issue two is overruled.

C. 
Was Counsel Constitutionally Ineffective? 

Ramon
contends that his trial counsel was constitutionally ineffective for offering
into evidence during the punishment phase of the trial a recorded telephone
conversation between himself and Bonnie.  After Bonnie provided law enforcement
officers with a statement implicating her father, a Texas Ranger assisted her
in an effort to have her father incriminate himself.  Bonnie called Ramon,
asked him to apologize for having sex with her under the threat of otherwise
telling her mother and secretly recorded the entire conversation.

The
State called Bonnie as a witness during the punishment phase of the trial. 
During her cross-examination, trial counsel introduced the recorded
conversation into evidence and played it for the jury.  During that
conversation, Ramon repeatedly stated that he did not remember having sex with
her and did not remember making her do anything.  He apologized numerous times
and said that he was bad but did not think he was that bad.  Although
apologetic, Ramon never admitted to having had sex with Bonnie, and he was
skeptical of how that could have happened without him being caught or without
her saying anything to anyone.








1.  Standard of Review.

In
order to determine whether Ramon=s
trial counsel rendered ineffective assistance at trial, we must first determine
whether he has shown that counsel=s
representation fell below an objective standard of reasonableness and, if so,
then determine whether there is a reasonable probability that the result would
have been different but for counsel=s
errors.  Strickland v. Washington, 466 U.S. 668 (1984).  We must indulge
a strong presumption that counsel=s
conduct fell within the wide range of reasonable professional assistance, and
Ramon must overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy.  Stafford v.
State, 813 S.W.2d 503, 508-09 (Tex. Crim. App. 1991).  An allegation of
ineffective assistance must be firmly founded in the record, and the record
must affirmatively demonstrate the alleged ineffectiveness.  Thompson v.
State, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).  Under normal
circumstances, the record on direct appeal will not be sufficient to show that
counsel=s
representation was so deficient and so lacking as to overcome the presumption
that counsel=s
representation was reasonable and professional.  Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002).  Rarely will the record on direct
appeal contain sufficient information to permit a reviewing court to fairly
evaluate the merits of such a serious allegation.  Id.  

2.  Analysis.

Ramon
contends that the only reason for introducing the recorded conversation was to
show his remorse, and he argues that trial counsel was ineffective because the
recording was Adamning
evidence,@ was
inconsistent with his trial testimony where he denied Bonnie=s allegations, and would
cause any juror with lingering doubt about Ramon=s
guilt to be moved toward more severe punishment. 

We
disagree with Ramon=s
assessment of trial counsel=s
strategy.  When counsel offered the recording into evidence, he told the trial
court that it was relevant because it showed remorse, but he also said that it
went to Bonnie=s
credibility and that it showed Ramon and Bonnie=s
state of mind at the time of the offense.  During Bonnie=s direct examination, she described the impact
of Ramon=s actions on
her life.  These included depression and anxiety.  Counsel argued that Bonnie
did not sound like a depressed, anxious, or frightened person on the recording
but like someone able to act in a calculated manner.








We
recognize that counsel=s
statements to the trial court were in response to a question concerning the
admissibility of the recording and, therefore, do not necessarily reflect his
trial strategy.  Our inquiry is not why counsel offered the recording but
whether this could be considered sound trial strategy.  Stafford, 813
S.W.2d at 508-09.  Trial counsel=s
argument for the admission of the recording reflects that it could.  

Counsel
could have also used the recording in an attempt to gain some sympathy for his
client or to lessen the jury=s
sympathy for Bonnie.  We disagree with Ramon=s
description of the recording as damning evidence.  Ramon never admitted to
doing anything inappropriate with Bonnie.  He consistently and repeatedly told
her that he did not remember having sex with her, and he was skeptical of her
claim.  He discussed his recent health problems, was very apologetic, and was
courteous throughout the conversation.  While Bonnie did not say anything
inappropriate or inconsistent with her trial testimony, the fact that she
called her father under false pretenses and secretly recorded their
conversation could have been viewed negatively by some jurors.  

Finally,
we note that the State did not claim that Ramon confessed during the
conversation but argued that Asome
strange things@ were
said during the conversation and focused on one statement where Ramon said A[m]aybe I need to go to the
penitentiary.@  That
specific statement was taken out of context because it was said with some
sarcasm and while essentially denying any improper behavior.  Because the use
of the recording could be part of a sound trial strategy, Ramon has not shown
that his counsel was constitutionally ineffective.  Issue three is overruled.

D. 
Was Ramon Deprived of a Unanimous Jury Verdict?

Ramon
argues that the jury=s
verdict deprived him of a unanimous verdict as guaranteed by the Texas
Constitution.[1]  Ramon argues
that he was indicted for three incidents alleged to have occurred on or about
July 23, 1994, but the State introduced evidence of multiple incidents
occurring over an eleven-year period of time.  Because the State=s case did not focus on any
one specific incident, Ramon concludes that the jury could not have unanimously
determined that he committed one specific act but may have instead convicted
him of being a bad person generally.  








Ramon
directs our attention to Judge Cochran=s
concurring opinion in Dixon v. State,[2]
to highlight the danger that defendants in sexual assault cases involving
minors frequently face of not receiving a unanimous verdict.  Judge Cochran
warned that our legal system is headed for a Atrain
wreck@ because our
penal statutes are intended to prosecute a person for committing one discrete
criminal offense at one discrete moment in time but sexual assault cases with
minor victims frequently involve allegations of generic, undifferentiated, and
ongoing acts of abuse.  201 S.W.3d at 737.  Judge Cochran suggested that the
legislature consider adopting a new penal statute that focused on a continuing
course of conduct.  Id.  We note that despite her concerns, Judge
Cochran joined the majority opinion.  In the absence of intervening legislative
action, the majority=s
opinion represents the law that we must follow.








In
Dixon, the victim was six years old at the time of the abuse and seven
years old at the time of trial.  Id. at 731.  She testified that her
uncle assaulted her 100 times.  One time occurred during the day and the rest
at night.  She did not otherwise distinguish between the incidents but
described each one as involving the same conduct.  Id. at 731-32.  The
defendant unsuccessfully requested that the State elect upon which incident it
would rely.  The court of appeals held this was error because, in part, it
deprived the defendant of a unanimous verdict.  Dixon v. State, 171
S.W.3d 432, 436 (Tex. App.CHouston
[14th Dist.] 2005, no pet.).  The Court of Criminal Appeals disagreed.  The
court noted that the case did not present allegations of different activities
with evidence from different sources.  The incriminating evidence came from one
source and involved one sequence of events.  The court concluded that the
victim was either credible or she was not.  Dixon, 201 S.W.3d at 735.              A
similar situation was present here.  Bonnie testified to an eleven-year period
of abuse.  There were some differences in conduct over that time, but the
differences represent more of an evolution than distinct and separate
incidents.  Bonnie testified that her father initially fondled her but later
started penetrating her; that, at first, he penetrated her from behind but
eventually started getting on top of her; and that, when the abuse first
started, she and Brenda shared a room but that she later got her own room.  The
only corroborating evidence came from Brenda who testified that she saw Ramon fondle
Bonnie once.  Just as in Dixon, the jury either believed Bonnie or it
did not.  There is no meaningful distinction between the allegations that would
allow some jurors to believe one incident occurred but another did not, while
allowing other jurors to reach an opposite conclusion.  The jury=s verdict indicates that it
unanimously found Bonnie=s
allegations credible.  Issue four is overruled.

IV. 
Holding

The
judgment of the trial court is affirmed.

 

 

RICK STRANGE

JUSTICE

 

July 3, 2008

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:   Wright, C.J.,

McCall, J., and Strange, J.









[1]Tex. Const. art. V, ' 13.





[2]201 S.W.3d 731, 736 (Tex. Crim. App. 2006).