**Bruce Douglas WILSON, Appellant**

v.

**STATE of Texas, Appellee.**

No. 11–03–00282–CR.

Court of Appeals of Texas,
Eastland.

July 21, 2005.

F. Clinton Broden and Franklyn Mickelsen, Broden & Mickelsen, Dallas, for Appellant.

Stephen E. Bristow, Dist. Atty., Graham, for State.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

W.G. ARNOT, III, Chief Justice.

The jury convicted appellant, Bruce Douglas Wilson, of two counts of aggravated sexual assault of a child. The jury assessed his punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of 35 years on each count.[1] The jury also imposed fines in the amount of $10,000 on each count. Appellant attacks his conviction in a single issue on appeal. He contends that the trial court erred in denying his motion to require the State to make an election regarding the specific incidents of sexual assault for which it sought to convict appellant.[2] We affirm.

Appellant was charged in a two-count indictment with committing acts of aggravated sexual assault against two sisters. The indictment alleged as follows:

[Count One] Bruce Douglas Wilson, hereinafter styled Defendant, on or

---

1. The trial court ordered that the two 35-year sentences are to run cumulatively. TEX. CODE CRIM. PRO. ANN. art. 42.08 (Vernon Pamph. Supp.2004–2005).

2. An election is "some action that excludes or limits the jury's consideration of an offense." *Ex parte Goodbread,* 967 S.W.2d 859, 861 n. 2 (Tex.Cr.App.1998).

about the 22nd day of September 2002, and before the presentment of this indictment, in the County and State aforesaid, did then and there, intentionally or knowingly cause the penetration of the mouth of [V.V.], a child who was then and there younger than 14 years of age and not the spouse of the Defendant, by Defendant's sexual organ;

[Count Two] Bruce Douglas Wilson, in the County of Stephens and State aforesaid, on or about the 22nd day of September 2002, and before the presentment of this indictment, did then and there, intentionally or knowingly cause the penetration of the female sexual organ of [A.V.], a child who was then and there younger than 14 years of age and not the spouse of the Defendant, by Defendant's finger.

The evidence presented at trial indicated that appellant committed multiple acts of sexual assault upon the girls over the course of several weeks. Appellant detailed these acts in a written statement which the State offered into evidence. His statement provided in relevant part as follows: [3]

I have known S.V. and her two daughters, A.V. and V.V. for approximately five years.[4] S.V. was a friend of my ex-wife, Orabel Wilson. S.V. used to take care of my dogs when I was gone. Between six and eight weeks ago, S.V. invited me to spend the night at their house. I was on the double bed in the living room. It was around midnight and everybody had gone to bed except for A.V. and I. A.V. and I were talking and she was telling me she was going to be a professional massuse. I asked her if she would give me a massage for twenty dollars. A.V. gave me the massage and I was massaging her back. We started kissing and it grew into a making out situation. At one point she was one top of me, dry humping me. We then got partially undressed. Both of us had our clothes about half way off. During this time, I touched her breast and I believe I touched her vagina. This would have been both on the outside and inside of her vagina. She was masturbating my penis and doing oral sex on my penis. She didn't sleep with me, she went to bed. Three or four weeks ago, I took S.V., A.V., V.V. and [S.V.'s boyfriend] with me on my truck. We went east of here, finally ending up in Orlando, Florida. The trip lasted approximately eleven days. We went to Universal Studios. During the trip, me and A.V. did a little kissing and a little massaging. This occurred four or five times. It was always in the truck. I rubbed her vagina a little bit. This would be both on the outside of her vagina and inside her vagina. That was all that happened during the trip to Florida. Since we returned, we have been together about three times. These would have been either at S.V.'s house or in my truck while it was parked next to their house. On one occasion, both A.V. and V.V. were in bed with me. This was in the house. V.V. was wanting to play I Dare You. For example, V.V. would dare A.V. to suck on my penis. A.V. would do it. A.V. dared V.V. to do the same thing and V.V. sucked on my penis. I didn't want to be dared too much, but I was snuggling with them and kissing them. It started out we were all dressed and then every-

---

**3.** Although appellant's statement referred to the parties by their names, we refer to the parties by initials so as to protect the identity of the children.

**4.** "S.V." is the mother of A.V. and V.V. A.V. and V.V. were 12 and 11, respectively, at the time of trial.

body ended up undressed. I kissed both of them on their breast and on their vagina. I was mostly kissing them on their lips, they were French kissing me a lot. I would say that I played I Dare You with both of the girls probably three or four times. These games would take place either in the house or in the truck. The last time I was with one of the girls was about ten days ago. I was with A.V. It was in their house. I was kissing her and massaging her. As best as I can recall, she was masturbating me. I was massaging her all over. We were French kissing. This was around 2:00 a.m. We were in the bed in the living room. I was holding her and touching her all over. I might have touched her breast. I touched her on the outside and inside of her vagina. We never had sex. [S.V.'s boyfriend] walked in and said A.V. can't sleep with [me] or something to that effect. A.V. then went to bed in her room. That was the last time I saw her.[5]

The State also presented testimony from A.V. and V.V. regarding appellant's conduct with them. A.V. testified that appellant penetrated her sexual organ with his finger and his penis during the trip to Florida. She also testified that appellant made contact with her sexual organ with his mouth during the trip. These acts occurred on more than one occasion during the trip to Florida. A.V. further testified that these acts occurred at her home in Stephens County on several occasions.

V.V. also testified that appellant made contact with her sexual organ with his mouth during the trip to Florida and that he penetrated her sexual organ with his finger on the trip. She stated that this conduct occurred "a lot" in Stephens County both before and after the trip to Florida. V.V. also testified about an occasion when appellant put his penis in her mouth. She testified that this act occurred in Stephens County.

Appellant did not testify at trial. He rested at the conclusion of the State's case-in-chief without presenting a defense. Defense counsel made the following statement during closing argument of the guilt/innocence phase of trial: "My client ... has never denied that this happened. He confessed to it, not just once, but he was let out of jail—he was let out on bond, got out of jail, and reconfessed to the crime again."

Appellant filed a written, pretrial motion asking the court to require the State to make an election as to the acts upon which it would rely in seeking to convict him. Appellant sought the following relief in the motion:

[Appellant] requests that prior to trial the State be required to elect which act of sexual conduct and the specific date of such, if any, that the State will rely upon in proving the allegations in the indictment. [Appellant] moves the Court, at the close of the evidence, to require the

**5.** Appellant submitted a supplement to his written statement which provided in relevant part as follows:

[Appellant] is not guilty of aggravated sexual assault, due to the entrapment caused by the mother's neglect in allowing the girls to watch XXX rated movies and leaving the girls alone with him with the movies, and smoking marijuana (in violation of her probation/testing dirty on a UA test). The second hand smoke from the

marijuana must have caused the bad judgement of [appellant] to get involved with minors, as he has never been involved with minors before, (nor will he ever be again). He's planning on getting married to Crystal Baxter, Age 25. [Appellant] does not smoke/use marijuana or any other drugs, nor cigarettes or alcohol.

The supplemental written statement was also admitted into evidence.

State to elect the particular date and incident of conduct that it relies upon in seeking the conviction of [appellant].

Appellant asserted in the motion that an election was necessary in order to provide him with adequate notice of the charges against him and to protect him from double jeopardy implications.[6] The trial court considered the motion immediately preceding jury selection. In denying the motion, the trial court stated that an election by the State was unnecessary because of the instructions which would be included in the court's charge with respect to the jury's consideration of evidence pertaining to extraneous offenses.[7]

■ We note at the outset of our analysis that the issues pertaining to the requirement for the State to make an election are currently under review by the Texas Court of Criminal Appeals. The court has granted petitions for discretionary review in two recent cases: *Farr v. State*, 140 S.W.3d 895 (Tex.App.-Houston [14th Dist.] 2004, pet'n granted), and *Phillips v. State*, 130 S.W.3d 343 (Tex.App.-Houston [14th Dist.] 2004, pet'n granted). In *Phillips*, the Fourteenth Court of Appeals determined that an error regarding the requirement for the State to make an election is constitutional and, therefore, subject to harm analysis under the consti-tutional error standard of review. TEX. R.APP.P. 44.2(a); *Phillips v. State, supra* at 350–52. The court in *Phillips* expressly disagreed with previous determinations by the 10th and 12th Courts of Appeals that election error is non-constitutional in nature. *See Cates v. State*, 72 S.W.3d 681, 696–97 (Tex.App.-Tyler 2001, no pet'n); *Wilson v. State*, 3 S.W.3d 223, 226 (Tex. App.-Waco 1999, pet'n ref'd). In *Farr*, the Fourteenth Court of Appeals followed its previous holding in *Phillips*. *Farr v. State, supra* at 900. The distinction between constitutional versus non-constitutional error is one of the two issues for which the Court of Criminal Appeals has granted review in *Phillips* and *Farr*. The court has also granted review upon the State's request for it to reexamine its holding in *O'Neal v. State*, 746 S.W.2d 769 (Tex.Cr.App.1988).

■ At this time, the Court of Criminal Appeals' opinion in *O'Neal* constitutes the controlling authority regarding the requirement for the State to make an election. The court held in *O'Neal* that the State must elect the specific act on which it will rely for conviction when the indictment alleges one sexual assault but the evidence shows multiple sexual assaults. *O'Neal v. State, supra* at 771; *Wilson v. State, supra* at 225. Before the State rests, the trial court has discretion in di-

---

**6.** Appellant's contention that an election by the State would protect him against potential double jeopardy implications is incorrect. The State's failure to make an election actually enhances an accused's double jeopardy protections. If the State does not make an election, it is barred from prosecuting in the future any offense within the scope of the indictment and for which evidence was introduced at trial. *See Rodriguez v. State*, 104 S.W.3d 87, 91 (Tex.Cr.App.2003); *Ex parte Goodbread, supra* at 860–61.

**7.** The charge of the court given to the jury to determine guilt/innocence contained the following instruction:

The defendant is on trial solely on the charge contained in the indictment. You are instructed that if there is any testimony before you in this case regarding the defendant having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same for the purpose of determining knowledge, identity or intent, or absence of mistake or accident, if it does, and for no other purpose.

recting the State to make an election. *O'Neal v. State, supra* at 772; *Phillips v. State, supra* at 349; *Farr v. State, supra* at 898. Once the State rests its case-in-chief, upon a timely request by the defendant, the trial court must order the State to make an election and the failure to do so constitutes error. *O'Neal v. State, supra* at 772; *Phillips v. State, supra* at 349; *Farr v. State, supra* at 898.

The State argues that the trial court was not required to grant appellant's request to require an election because appellant presented his request prior to the close of the State's case-in-chief. *See O'Neal v. State, supra* at 772. We disagree with the State's contention that appellant's motion was premature. As indicated above, appellant asked the trial court to require the State to make an election "at the close of the evidence" in his pretrial motion. Thus, appellant sought to compel an election by the State at a time when the State was required to make an election under the holding in *O'Neal.*

■ Having determined that appellant's request for an election was timely, we must next consider whether the denial of the motion constituted error. We conclude that error occurred with respect to count two of the indictment charging appellant with digitally penetrating A.V.'s sexual organ. However, error did not occur regarding count one of the indictment charging appellant with penetrating V.V.'s mouth with his sexual organ.

The evidence revealed that appellant committed multiple acts of sexual assault upon A.V., including several instances of digital penetration. The evidence did not focus upon a single episode of digital penetration. *O'Neal v. State, supra* at 772–73. Instead, the evidence was general in na-

ture. The trial court's denial of appellant's request for an election constituted error with respect to count two of the indictment because there was evidence that appellant committed the act charged in this count on multiple occasions.

■ The evidence regarding appellant's conduct with V.V. also revealed that appellant committed multiple acts of sexual assault upon V.V. Unlike the evidence of multiple instances of digital penetration with A.V., however, the evidence only revealed one instance wherein V.V. performed oral sex upon appellant. Specifically, the prosecutor asked V.V. the following question: *"Was there an occasion*—was there some time, [V.V.], that he put his thing in your mouth?" (Emphasis added) V.V. answered "[y]es" to this question. Furthermore, appellant's statement only described one occasion wherein V.V. performed oral sex upon him.[8] Absent evidence that V.V. performed oral sex upon appellant on more than one occasion, the trial court did not err in denying appellant's request for an election with respect to count one of the indictment.

■ Having determined that error occurred with respect to count two charging appellant with digitally penetrating A.V., we must next determine if the harm, if any, caused by the error constituted reversible error. As noted previously, there is a split of authority among our sister courts regarding the harm analysis to be used in evaluating election errors which the Court of Criminal Appeals will likely resolve in the future. In the interim, we agree with the Fourteenth Court of Appeals's determination in *Phillips* that election error is one of constitutional magnitude based upon the purposes of

---

8. Appellant stated as follows in his statement: *"On one occasion,* both A.V. and V.V. were in bed with me. This was in the house. V.V. was wanting to play I Dare You. For exam-

ple, V.V. would dare A.V. to suck on my penis. A.V. would do it. A.V. dared V.V. to do the same thing and V.V. sucked on my penis." (Emphasis added)

the election requirement. *Phillips v. State, supra* at 352. We are aided in this decision by the Court of Criminal Appeals's recent opinion in *Ngo v. State,* No. PD–0504–04, — S.W.3d ——, 2005 WL 600353 (Tex.Cr.App. March 16, 2005). The court stated in *Ngo* that jury unanimity is one of the purposes of requiring the State to make an election. *Ngo v. State, supra* at *6, — S.W.3d at ——. The court further noted that jury unanimity is *required by the Texas Constitution* in felony cases. *Ngo v. State, supra* at *4, — S.W.3d at ——; *see Francis v. State,* 36 S.W.3d 121, 126 (Tex.Cr.App.2000)(Womack, J., concurring)(citing TEX. CONST. art. V, § 13).

 Under the constitutional error standard of review set out in Rule 44.2(a), we must reverse unless we find beyond a reasonable doubt that the error did not contribute to appellant's conviction under count two. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In order to apply the standard set out in Rule 44.2(a), we must "calculate, as nearly as possible, the probable impact of the error on the jury in light of the other evidence." *McCarthy v. State,* 65 S.W.3d 47, 55 (Tex.Cr.App.2001), *cert. den'd,* 536 U.S. 972, 122 S.Ct. 2693, 153 L.Ed.2d 862 (2002); *Wesbrook v. State,* 29 S.W.3d 103, 119 (Tex.Cr.App.2000), *cert. den'd,* 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. *Wesbrook v. State, supra* at 119 (citing *Satterwhite v. Texas,* 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988)). While the most significant concern must be the error and its effects, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Wesbrook v. State,*

*supra* at 119. If an appellate court rules that an error is harmless, it is in essence asserting that the nature of the error is such that it could not have affected the jury. *Wesbrook v. State, supra* at 119.

Appellant confessed to committing the offense charged in Count Two on multiple occasions in a written statement which was admitted at trial without objection. Appellant provided explicit details about the assaults in his statement. This evidence was obviously overwhelming. Furthermore, appellant made no effort at trial to recant his confession. In light of appellant's confession that he committed the charged offense on multiple occasions, we conclude that the election error pertaining to Count Two was harmless. Moreover, it appears that the election error benefitted appellant by protecting him against future prosecutions.[9] Appellant's sole issue is overruled.

The judgment of the trial court is affirmed.

---

9. *See* Footnote No. 6 above.