# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00203-CR
## NO. 03-04-00270-CR

**Craig Jonathan Warner, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF LAMPASAS COUNTY, 27TH JUDICIAL DISTRICT NOS. 7410 & 7411, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Craig Jonathan Warner appeals from two judgments after conviction by a jury of the offenses of aggravated sexual assault of a child under 14. *See* Tex. Pen. Code Ann. § 22.021(a) (West Supp. 2004-05). These causes involving alleged acts on the same day against two separate children were tried together by agreement of the parties. The jury assessed punishment at 99 years in prison and a $10,000 fine, the sentences to run concurrently. In a single issue on appeal, appellant challenges the charge to the jury on the ground that it permitted the jury to convict on less than a unanimous verdict. Because appellant failed to seek an election and otherwise failed to preserve error and there was no egregious harm so as to deprive appellant of a fair and impartial trial, we affirm the judgments of conviction.

**FACTUAL AND PROCEDURAL BACKGROUND**

Appellant and Stephanie Warner were married in 1999 and lived in Kempner in Lampasas County with an eight-year-old daughter, M.J., and a son, both of whom were born of a prior relationship of Mrs. Warner's, and a daughter born of this marriage. On the evening of March 22, 2003, Y.R., the daughter of Mrs. Warner's cousin, came to spend the night with M.J. at the Warner home.[1] After the family had cooked dinner outdoors, the two girls asked Mrs. Warner if appellant "could sleep with them in the playroom" where they were spending the night. Although Mrs. Warner thought it was an unusual request, she agreed to it. Appellant went to the playroom with the girls to watch television and the rest of the family went to their respective rooms. Mrs. Warner sewed in her room until she went to sleep. She was awakened at midnight by laughter from the playroom and went to check on the girls. She found the door locked. Upon unlocking the door and viewing appellant and the girls laying next to one another, Mrs. Warner questioned why the door was locked. Although she recalled some unease because the three were playing and Y.R. appeared to be spanking appellant, she returned to her room and fell asleep.

Later that day, as Mrs. Warner helped M.J. get dressed, she observed an unusual dark smudge on M.J.'s pajamas. When asked about the stain, M.J. responded that it was "from pushing Daddy." Mrs. Warner then asked whether appellant was tickling or wrestling with her. M.J. responded, "No, I was pushing Daddy off of [Y.R.]." Mrs. Warner then testified that M.J. got "really quiet on me, and she looked away," and worried that Mrs. Warner was going to get mad at her. When Mrs. Warner assured her that she would not, M.J. told her that appellant touched Y.R. "down there," and pointed "down."

---

[1] At the time of trial in January 2004, both girls were nine years old.

Mrs. Warner alerted Y.R.'s mother and took both children to Metroplex Hospital where she and the children were referred to Scott & White Hospital for a full medical and sexual assault examination conducted by Dr. Pamela Green, a physician in obstetrics and gynecology at Scott & White. At trial, Dr. Green opined that there had been penetration at least of the female sexual organ "past the outer lips," if not of the vagina, of both girls. She testified concerning the physical evidence as well as the information provided by the girls reflecting the sexual acts committed on the girls.

On April 17, 2003, the State indicted appellant in two separate indictments for the offenses of aggravated sexual assault of a child under 14. The jury returned a general verdict of guilty in both causes.

## ANALYSIS

In appellant's sole issue presented, he contends that the trial court erred by submitting a charge that permitted the jury to convict on less than a unanimous verdict. Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2004-05). He argues that the trial court allowed the jury's general verdict to be based on multiple, distinct offenses thus inviting the jury to convict on any one of the three offenses in the charging paragraphs. *See Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000); *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991), *cert. denied*, 504 U.S. 958 (1992).

The indictments were identical as to both children and, in a single count charging aggravated sexual assault, contained three paragraphs alleging that appellant, on or about March 23, 2003,

3

did then and there intentionally or knowingly cause the penetration of the female sexual organ of [named child], a child younger than 14 years of age who was not the spouse of said defendant by inserting defendant's finger,

Paragraph Two: did then and there intentionally or knowingly cause the sexual organ of [named child] a child younger than 14 years of age who was not the spouse of said defendant to contact the mouth of defendant,

Paragraph Three: did then and there intentionally or knowingly cause the anus of [named child], a child younger than 14 years of age who was not the spouse of said defendant to contact the sexual organ of the defendant.

Appellant pleaded not guilty in both causes. The parties agreed to try the causes together. At trial, the State presented testimony from the following witnesses: Stephanie Warner, appellant's wife who observed appellant and the children in the playroom and received the first outcry; Sandra Riley, Y.R.'s mother; Dr. Pamela Green, the doctor who performed the medical and sexual assault examination at Scott & White; Amy Penny, a forensic interviewer with the Hill County Children's Advocacy Center in Burnet who conducted the videotaped interviews of the girls; David Whitis, a sergeant investigator with the Lampasas Sheriff's Office, who investigated the sexual assault allegations; Brent Watson, a criminalist for the Texas Department of Public Safety crime laboratory in Waco, who examined the evidence recovered from the girls, and testified, among other things, to finding semen in a sample obtained from Y.R.; Blake Goertz, the DNA section supervisor with the DPS Waco crime lab; and the two girls, Y.R. and M.J.

The defense presented the testimony of three witnesses: Stephanie Warner, who testified about M.J.'s testimony that the abuse had occurred since M.J. was in kindergarten and whether appellant was in fact abroad in the military at the time that episode of abuse was alleged to have occurred; appellant's ex-wife who testified that appellant had been alone with young girls when they were married and no one had ever complained; and a family physician, who had conducted a

4

semen analysis on appellant and testified that the seminal fluid found in Y.R. was inconsistent with appellant's.

Appellant did not object to the charge nor did he submit a proposed instruction. At the charge conference, appellant's trial counsel stated he had no objection to the charge. In response to the court's inquiry whether counsel had taken a "look" at the charge, the State responded, "I think [appellant's counsel] wants the failure to testify in there." The charge included instructions concerning reasonable doubt and a unanimous verdict which are not separately challenged on appeal.

The trial court's charge to the jury read, in pertinent part

Our law provides that a person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes penetration of the female sexual organ by any means or causes the anus of a child under 14 years of age to contact the sexual organ of another person; or causes the sexual organ of a child under 14 years of age to contact the mouth of another person, including the actor and the child is not the spouse of the person committing the offense.

. . . .

Now if you find from the evidence beyond a reasonable doubt that on or about the 23rd day of March, 2003 in Lampasas County, Texas the defendant, Craig Jonathan Warner, did then and there intentionally or knowingly cause the penetration of the female sexual organ of [Y.R.], a child younger than 14 years of age, who was not the spouse of said defendant by inserting defendant's finger or cause the sexual organ of [Y.R.] to contact the defendant's mouth, or did then and there intentionally or knowingly cause the anus of [Y.R.] who was not the spouse of the defendant to contact the sexual organ of the defendant, then you will find the defendant guilty of aggravated sexual assault and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of aggravated sexual assault and say by your verdict "Not Guilty" of said offense.

An identical paragraph was included with respect to the other cause and M.J.

Two separate verdict forms relating to victims Y.R. and M.J. referenced the single offense of aggravated assault. The jury returned a verdict finding appellant guilty in both causes.

5

Our disposition of this point is controlled by *Ngo v. State*, No. PD-0504-04, 2005 Tex. Crim. App. LEXIS 457, at \*11-13 (Tex. Crim. App. March 16, 2005); *Francis*, 36 S.W.3d at 125 and *Vick*, 991 S.W.2d at 833. We are initially guided in our analysis by the court's opinion in *Francis*. In *Francis*, the defendant was charged with a single count of indecency with a child. *Id*. at 122. The State introduced evidence of four acts of indecency, but elected to proceed on only two of those acts. "Throughout the trial, appellant asked the trial court to require the State to elect between the two different acts of indecency, but the trial court denied these requests." *Id*. At the close of the State's evidence, appellant again requested that the trial court require the State to elect between the two acts. Appellant argued that if the State was not limited to one act, the jury could come to a non-unanimous verdict, with some jurors believing he committed one act while other believed he committed the second act. The trial court overruled appellant's objections. *Id*. The trial court also denied appellant's requested charge that would have required the State to prove that appellant committed both alleged acts of indecency. *Id*.

On appeal, the court of criminal appeals granted appellant's petition for discretionary review to consider whether "the court of appeals erred in holding that the charge submitted to the jury allowing a conviction on less than a unanimous verdict was not error." *Id*. The court first considered whether error had been preserved:

> Considering appellant's objection to the charge, his repeated attempts to require the State to elect, and the unique nature of the indictment and the incidents alleged in this case, appellant's objection to the jury charge was sufficient to apprise the trial judge of the potential charge error.

*Id*. at 123. The court held that appellant properly preserved the error for appellate review and that error existed in the jury charge. The court then remanded the cause for a harm analysis. *Id*. at 125.

6

Likewise, here the State charged three different violations of the same offense in a single count containing three paragraphs. Because the State affirmatively decided to seek only one conviction, the jury charge contained error. *See* Tex. Pen. Code Ann. § 22.021(a);[2] *Vick*, 991 S.W.2d at 834. Finding error, we must analyze that error for harm.

Even if we assume there was error, we must determine whether any error was harmful enough to require reversal. *See Abdnor v. State*, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994). When defense counsel does not object to a jury charge, error, if any, does not require reversal unless it was so egregious and created such harm that appellant was denied a fair trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). The degree of harm required for reversal turns on

---

[2] The penal code provides that a person commits aggravated sexual assault when, among other ways, the person

    (a)(1)(B)   intentionally or knowingly:

        (i)   causes the penetration of the anus or sexual organ of a child by any means;

        (ii)   causes the penetration of the mouth of a child by the sexual organ of the actor;

        (iii)   causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

        (iv)   causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

        (v)   causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and

    (2)   if:

        (B)  the victim is younger than 14 years of age . . . .

Tex. Pen. Code Ann. § 22.021(a) (West Supp. 2004-2005).

7

whether appellant preserved error in the trial court. *Abdnor*, 871 S.W.2d at 732. An appellant who timely objects to the charge preserves error for review, and reversal is required only on the finding of "some harm." *Id*.

Here, appellant agreed to try the causes together in a single trial. Appellant made no objection to the court's charge nor did he submit a charge or any requested language. Nor did appellant ever move for or otherwise seek an election requiring the State to elect which act it would rely on for conviction. Thus, appellant failed to preserve error. *Francis*, 36 S.W.3d at 124; *O'Neal v. State*, 746 S.W.2d 769, 771 n.3 (Tex. Crim. App. 1988).

There is a split of authority among our sister courts regarding the harm analysis to be used in evaluating jury charge error implicating jury unanimity issues. *Compare Phillips v. State*, 130 S.W.3d 343, 352 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) *with Cates v. State*, 72 S.W.3d 681, 696-97 (Tex. App.—Tyler 2001, no pet.) *and Wilson v. State*, 3 S.W.3d 223, 226 (Tex. App.—Waco 1999, pet. ref'd). Until this issue is resolved by the court of criminal appeals, we are guided by the court's opinion in *Ngo* observing that jury unanimity is one of the purposes of requiring the State to make an election and is required by the Texas Constitution in felony cases. 2005 Tex. Crim. App. LEXIS 457, at *14, *23. We therefore apply the constitutional error standard of review. If there is a reasonable likelihood that the error materially affected the jury's deliberations, then, the error is not harmless beyond a reasonable doubt. *Wesbrook v. State*, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). While the most significant concern must be the error and its effects, the presence of overwhelming evidence supporting the finding in question can be a factor in the evaluation of harmless error. *Id*.

8

To assess the degree of harm, we examine the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171. We examine the relevant portions of the entire record to determine whether appellant suffered any actual, rather than theoretical, harm as a result of the error. *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). Errors that result in egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing *Almanza*, 686 S.W.2d at 172). It is the appellant's burden to prove that he suffered some actual, rather than merely theoretical, harm from the error. *Dickey v. State*, 22 S.W.3d 490, 492 (Tex. Crim. App. 1999) (citing *Arline*, 721 S.W.2d at 351).

Examining these factors, we conclude that appellant has not carried his burden to prove that he suffered actual, rather than theoretical, harm from the error. As an initial matter, we may not second-guess appellant's strategy in trying these causes together and in declining to seek an election by the State. Perhaps he recognized that the repeated commission of the same offense or violations of multiple subsections of section 22.021(a) may be tried in a single criminal action and punished by consecutive sentences. *See, e.g.*, *Patterson v. State*, 152 S.W.3d 88, 91 (Tex. Crim. App. 2004). The State's failure to make an election also enhances an accused's double jeopardy protections. If the State does not make an election, it is barred from prosecuting in the future any offense within the scope of the indictment and for which evidence was introduced at trial. *See Rodriguez v. State*, 104 S.W.3d 87, 91 (Tex. Crim. App. 2003); *Ex parte Goodbread*, 967 S.W.2d

859, 860-61 (Tex. Crim. App. 1998). The error therefore benefitted appellant by protecting him against future prosecutions. *See Campbell v. State*, 149 S.W.3d 149, 156-157 (Tex. Crim. App. 2004) (Keller, J., concurring) (explaining interplay between double jeopardy and election). In the present case, appellant was exposed to a single count in both causes rather than multiple counts and consecutive sentences. That appellant's counsel understood this benefit is reflected by the fact that he filed a motion to quash a second count in the indictments that charged indecency with a child. He argued that it was the same criminal conduct charged in two different counts and was a violation of the double jeopardy clause. The motion was deferred until trial and the count was abandoned by the State at the close of its case. Citing *Patterson*, the State agreed the indecency with a child offense was subsumed within the charge of aggravated sexual assault. *See Patterson*, 152 S.W.3d at 91.

This is not a case in which appellant complains of the trial court's denial of a motion to elect.[3] *See, e.g.*, *Wilson v. State*, No. 11-03-00282-CR, 2005 Tex. App. LEXIS 5623, at *11 (Tex. App.—Eastland July 21, 2005, no pet.); *Dixon v. State*, No. 14-03-01259-CR, 2005 Tex. App. LEXIS 5609, at * 5 (Tex. App.—Houston [14th Dist.] July 21, 2005, no pet.); *Farr v. State*, 140 S.W.3d 895, 900 (Tex. App.—Houston [14th Dist.] 2004, pet. granted); *Phillips*, 130 S.W.3d at 349; *Gutierrez v. State*, 8 S.W.3d 739, 748 (Tex. App.—Austin 1999, no pet.); *Wilson*, 3 S.W.3d at 225; *see also Francis*, 36 S.W.3d at 122. The State may present evidence of the acts charged or that the charged acts occurred on multiple occasions. *See Worley v. State*, 870 S.W.2d 620, 622 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Upon the timely motion by the defendant, the State is

---

[3] Our analysis of the election requirement is controlled by *O'Neal v. State*, 746 S.W.2d 769, 771-73 (Tex. Crim. App. 1988).

required to make an election of those acts upon which it will rely to pursue a conviction. *O'Neal*, 746 S.W.2d at 771 n.3. Absent such a motion by the defendant, the State is not required to make an election. *Id.*; *Crawford v. State*, 696 S.W.2d 903, 906 (Tex. Crim. App. 1985). The record reflects that appellant's counsel considered and then rejected a request for an election.

Here, appellant failed to alert the trial court to his unanimous jury verdict claim. He did not request a severance of any charges; he does not dispute the State's assertion that he sought to try the two causes together. He failed to object to any statements by the prosecution and the trial court during voir dire or opening argument that might relate to his claim now. Nor did he object to the closing argument of the State following the reading of the court's charge in which the prosecutor urged

> Paragraph one tells you that this assault, this type of assault can be committed in three different ways, and they're listed there. And they are co-joined by a disjunctive word "or" which means that you may find from the evidence beyond a reasonable doubt that one of those ways was proved to your satisfaction beyond a reasonable doubt. You may find that two of them, two of the three, you may find that all three were substantiated by the testimony and/or medical evidence and the work-up by the lab. You may find all three of them there, but you only need to find one in order to find the defendant guilty of the offense of aggravated sexual assault of a child.

Importantly, the State introduced evidence supporting the three paragraphs and appellant does not challenge the sufficiency of that evidence. *See Kitchens*, 823 S.W.2d at 259. M.J., appellant's stepdaughter, and Y.R. both testified at trial. M.J. testified over no objection that appellant had touched her "in a bad way" from the time she was in kindergarten, when she was five or six-years-old. She testified that on the late night of March 22, appellant "raped" the two girls in the playroom. She acknowledged on cross examination that she had learned the word from her

11

mother and that to her it meant that he touched her "in very bad spots." That night, he touched her "pee-pee" with his "private part"; earlier in the evening he had touched her with his "private," finger, and tongue.

Y.R. also testified that while they were in the playroom overnight appellant put his "virgina," which she also referred to as his private part, "in mine" and "in my bottom" as she was laying on his stomach. Earlier that evening he touched her "virgina" with his mouth which she also observed him do on M.J. She testified that later that morning he pushed his "private part" into her "virgina." Both girls were also videotaped by the forensic interviewer and the videotapes were introduced into evidence.

Dr. Green examined the two girls and testified concerning the physical evidence she observed during the medical and sexual assault examination. She opined that there had been penetration at least of the female sexual organ "past the outer lips," if not of the vagina, of both girls. Dr. Green also testified that as part of her medical history, M.J. told her that appellant had done bad things to her since kindergarten, including "putting his finger in her pee-pee" and his tongue in her mouth. At the hospital, M.J. told Dr. Green: "He did it with us, me first. His wiener touched my pee-pee and my butt. His mouth touched my pee-pee." Y.R. told Dr. Green, and Green recorded in her forensic examination report, that appellant's penis touched her "virgina" and also M.J.'s, that appellant touched her "boobies" with his hands, and that he "French kissed my mouth and my vagina." Green then recorded that Y.R. told her: "He put his penis in my butt. I told him to stop but he said it was too hard for him to stop. He did it again in the morning. . . . He told us to lick it or kiss it (his penis). Me & [M.J.] said 'no.'" None of the defense witnesses testified as to the events that transpired—or that they did not—with the girls.

In his closing argument, appellant's counsel argued that the inconsistencies in the girls' statements, the videotaped statements, and testimony could not be reconciled and that "it never happened." Viewing the indictment, evidence, and charge in its entirety, it is evident that the jury simply did not believe the defense case. Had the jury credited the defense witnesses or disbelieved the young girls, it would have acquitted him. With young children who struggle even with the vocabulary of what has transpired, the defendant has not suffered actual harm when he fails to challenge that from which he may arguably have sought benefit.

Based on the state of the record, appellant has not carried his burden to show that he suffered actual and not theoretical harm from any error. The harm espoused by appellant is merely theoretical and not supported by the record. We conclude that appellant was not "egregiously harmed" by any error in the charge because the jury could have given effect to appellant's defense theory and acquitted him under the instructions given, and the evidence is sufficient to support the allegations. *Cf. Gonzalez v. State*, 8 S.W.3d 640, 641 (Tex. Crim. App. 2000) (general substantive constitutional rule is that "a general verdict [is] valid so long as it [is] legally supportable on one of the submitted grounds—even though that [gives] no assurance that a valid ground, rather than an invalid one, [is] actually the basis for the jury's action.").

Given the nature of the allegations in the indictment, the proof at trial, and the charge and jury argument about the charge, we conclude that appellant was not deprived of a fair and impartial trial.

13

## CONCLUSION

Accordingly, we conclude that any error did not rise to the level of egregious harm so as to deprive appellant of a fair and impartial trial. Overruling appellant's sole issue presented, we affirm the judgments of conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   September 22, 2005

Do Not Publish